**KELLER PRODUCTS, Inc.**

v.

**RUBBER LININGS CORP.**

**No. 11067.**

United States Court of Appeals,
Seventh Circuit.

May 12, 1954.

Clarence E. Threedy, Edward C. Threedy, Ben Copple, Chicago, Ill., for appellant.

Lloyd C. Root, Marzall, Johnson, Cook & Root, Chicago, Ill., Oscar C. Limbach, Cleveland, Ohio, for appellee.

Before DUFFY, LINDLEY and SCHNACKENBERG, Circuit Judges.

DUFFY, Circuit Judge.

This is an action for trade-mark infringement and unfair competition. The trial court found the issues favorable to plaintiff, entered judgment accordingly, and awarded to plaintiff $1,500 as punitive damages, plus $1,500 attorney fees.

Plaintiff charged defendant with infringement of its trade-mark "Tub-Kove," registered on the Supplemental Register in the U. S. Patent Office, bearing Registration No. 529,264, dated August 15, 1950. The complaint also charged infringement of a trade-mark registered by plaintiff, being a design consisting of a circular solid colored background with a contrasting angular figure thereon, registered on the Principal Register in the U. S. Patent Office,

bearing Registration No. 553,206, dated January 8, 1952. Each registration showed that the trade-mark was used for flexible sealing strips.

As early as 1948 plaintiff engaged in the manufacture and sale of flexible sealing strips made of white, rubber-like material and adapted to be cemented at the juncture of intersecting surfaces, particularly where wall and bathtub surfaces join. The strips are used to seal the crack or space between such surfaces. The strips are sold to the public as part of a kit made up of a 15 ft. length of sealing strip, a bottle of cement, a bottle of solvent, and a brush applicator. The strips are in a flat, ribbonlike form, put up in an elongated roll. The strips have a characteristic feature, in that when applied at a right angle to wall and tub, a triangular shaped recess opens on the side adjacent to the porcelain of the tub and the wall. The cement, by working into and adhering to the recesses of the strip, as well as to the bathtub and wall surfaces, causes the strip to remain firmly in place in spite of the presence of moisture, steam and soap.

Plaintiff adopted and used a distinctive package for the marketing of its sealing strip. On the front and on each side of its package, "Tub-Kove" appeared in large white letters. On the front of the package and immediately under "Tub-Kove," appeared "Sealing Strip" in white letters, while on the sides, the words "Sealing Strip" appeared in black letters immediately following "Tub-Kove." Underneath part of the word "Tub-Kove" as it appears on the front of the package, and immediately adjacent thereto, appeared the design, consisting of a black circular background, with a white angular figure thereon, which figure was a representation of a cross-section view of plaintiff's sealing strip as applied. On the face of the package an outline of two bathtubs also appeared, and the places where the sealing strips should be applied were indicated by heavy white lines.

Prior to the commencement of this suit plaintiff had spent in excess of $42,000 in advertising its product, and in addi-tion had received considerable free advertising in trade magazines and papers. Plaintiff's product was well received by the public. Plaintiff sold more than 372,000 of its packaged kits, including 75,000 which were sold to the retail trade by Sears-Roebuck & Company under its own trade-mark, "Harmony House."

In 1952 defendant started marketing a sealing strip of a material and color similar to that used in plaintiff's strip. It adopted a package of the same shape and dimensions as that used by plaintiff. The words "Tub Cove" in large black letters appeared on the front and both sides of defendant's package. The words "Seal Strip" in smaller black letters appeared either immediately thereunder or following the words "Tub Cove." Defendant also used on the front of its package a circular design with a solid dark blue background, on which appeared an angular figure which represented a cross-section of a sealing strip as applied, with the recess resembling very closely that in plaintiff's strip but not being a truthful representation of a cross-section of the strip as manufactured and sold by defendant. On the front of the package an outline of two bathtubs also appeared, and the places where the sealing strips should be applied were indicated by heavy black lines. Defendant's package also enclosed a bottle of cement, a bottle of solvent and a brush applicator, in addition to a 15 ft. strip of its sealing strip, in an elongated roll.

The colors of plaintiff's and defendant's packages were not similar. Approximately one-third of the top of plaintiff's package was reddish orange in color, the other portion being black and white in about equal amounts. Over one-half of both sides of plaintiff's package was white, and all printing on the sides was in black, except the words "Tub-Kove" which were in white letters. The predominating color of defendant's package was maize-yellow, the other color being dark blue. A scalloped white line extending entirely around the package separated the yellow and blue portions.

It is apparent that the colors used in the respective packages would not be the basis of customer confusion.

On the rear side of plaintiff's package, on a black background, "Directions for Applying Cove Sealing Strip" appeared in white letters, the instructions being contained in 7 paragraphs. In Paragraph 5 appears, "For the best fit in sharp corners, follow the simple mitering steps below." Two designs, labeled "A" and "B," followed. On defendant's package the instructions printed in black on a yellow background are almost identical to those on plaintiff's package. The fifth paragraph provides, "For the best fit in sharp corners, follow the simple mitering steps below," followed by two designs labeled "A" and "B,' same being very similar to those appearing on plaintiff's package. On either end of plaintiff's package its corporate name and address appear printed in black letters on a white background. On defendant's package its corporate name and address likewise appear printed in black letters on a yellow background.

The district court found that while defendant's package is not identical to that of plaintiff, when viewed in their entirety their similarity, and defendant's use of the dominant features of plaintiff's package, are immediately apparent. The court observed, "Except to the very careful observer, the plaintiff's and defendant's packages resemble each other as much as do the Gold Dust Twins." The court found neither of plaintiff's marks to be descriptive, but also found that they had acquired a secondary meaning. The court further found that there had been confusion as to the marks in the past, and that there is a likelihood of confusion in the future. The court concluded that the words "Tub-Kove" constitute a valid trade-mark as applied to flexible sealing strips such as those manufactured by plaintiff; also that the angular design against a circular background constituted a valid trade-mark as applied to the same products. The court concluded that plaintiff's trade-mark registrations are valid, and that the

marks were infringed by defendant, and ordered that the further use thereof by defendant be enjoined. The trial court also sustained plaintiff's charge of unfair competition.

Defendant urges that the term "Tub-Kove" is descriptive and that no secondary meaning was proved. Defendant also argues that due to the differences in dress and color between plaintiff's and defendant's packages, there was no reasonable probability of confusion. Defendant also points out that on the two ends of its package its corporate name and address prominently appear.

We consider first the alleged invalidity of plaintiff's trade-mark "Tub-Kove," Registration No. 529,264. Is it descriptive as applied to sealing strips? "Tub" describes a tub, so we direct our attention to "Kove."

"Cove" is a well recognized English word having several meanings, one of which is given by *Webster's New International Dictionary, 2d Ed., Unabridged,* as "a concave molding"; also "a member whose section is a concave curve"; also, as a verb, "to arch over; to build in a hollow concave form." A "coved ceiling" is defined as "a ceiling the part of which next to the wall is constructed in a cove." *Century New Dictionary and Encyclopedia* gives as a definition, "Any kind of a concave molding; the hollow of a vault," and a cove ceiling as "a ceiling formed in a coved or arched manner at its junction with the side walls." Witnesses experienced in the art explained that there are floor cove strips, wall cove strips, ceiling cove strips, etc. In its directions on the back of its package, plaintiff described its product as a "cove sealing strip."

Plaintiff always used the term "Tub-Kove" in connection with its sealing strips. The strips, as applied to the tub and wall surfaces, can properly be described as a concave molding for a tub, and the words are descriptive unless saved by the fact that plaintiff spelled "cove" as "Kove." The pronunciation would be the same. Spelling "cove" as

"Kove" does not make the word less descriptive. In Steem-Electric Corp. v. Herzfeld-Phillipson Co., 7 Cir., 118 F.2d 122, 126, we said, "Can plaintiff by changing one letter in the word 'steam' so as to make it read 'steem' make it any less descriptive? It is our view that the answer must be in the negative." In Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 455, 31 S.Ct. 456, 55 L.Ed. 536, the court held the word "Rubberoid" being a descriptive word was nonetheless descriptive when spelled "Ruberoid," and that the latter could not be appropriated as a trade-mark.

The Patent Office refused registration of "Tub-Kove" on the Principal Register; thereafter plaintiff registered the mark on the Supplemental Register under § 23 of the Trade-Mark Act, 15 U.S.C.A. § 1091. By the terms of the statute a mark which is merely descriptive when applied to the goods of an applicant may be registered on the Supplemental Register. In our view "Tub-Kove" is descriptive and is not valid as a technical trade-mark.

However, where a mark has acquired a secondary meaning, it will be protected irrespective of any original weakness. If a generic term has acquired a secondary meaning, latecomers must adopt means to avoid public deception. Jewel Tea Co., Inc. v. Kraus, 7 Cir., 187 F.2d 278, 283. The district court found that the mark "Tub-Kove" had acquired a secondary meaning. The burden was on the plaintiff to establish that the primary significance of "Tub-Kove" in the minds of the consuming public is not the product but the producer. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73. In other words has the trade-mark "Tub-Kove" come to represent in the minds of the public the source or origin of the goods, rather than the goods themselves?

The proof in this record is rather meager that "Tub-Kove" in the minds of the consuming public meant the plaintiff and not the plaintiff's product. However, we are required to consider the evidence in the light most favorable to the plaintiff. Doing so, we cannot say that the court's finding as to a secondary meaning of "Tub-Kove" was clearly erroneous.

We think the district court was clearly correct in holding the design mark, Registration No. 553,206 valid. This mark is in effect a bull's-eye design, which was used on the top or cover of plaintiff's package. The fact that two letters of "Tub-Kove" and two letters of the word "Sealing" intruded somewhat on the black circle of the design does not destroy the validity of the mark. The eyes of a purchaser, would be drawn to the design so prominently displayed on the cover of plaintiff's package. The defendant adopted a very similar design, showing an angular figure on a dark circular background. Defendant even copied the cross-section view of plaintiff's strip, although the cross-section view of it own product was different. The defendant presented no evidence as to how it happened to use a design so similar to that used by plaintiff. One who makes use of another's trade-mark has the burden of justifying such use and to show his right has been exercised with reasonable regard to the rights of the owner of the mark. Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 2 Cir., 199 F. 2d 602.

Defendant argues that proof is lacking that in purchasing defendant's kit anyone was deceived by defendant's design into the belief he was purchasing plaintiff's kit. To sustain an action of trade-mark infringement and unfair competition, "it is not necessary to show actual cases of confusion since the test under the statute, 15 U.S.C.A. § 1114(1), is likelihood of such confusion." Independent Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc., 7 Cir., 205 F.2d 921, 925.

Defendant also relies on a disclaimer which plaintiff filed during the prosecution of its application for the design trade-mark. The disclaimer was, " * *

no claim being made herein to the representation of the goods separate and apart from the trade-mark as shown \* \* \*." This disclaimer was required by the Patent Office because the cross-section of the strip which forms the angular design is a representation of the plaintiff's strip in its applied form. Plaintiff would not have been in a position to complain about defendant's conduct being unfair if on the face of its package defendant had displayed a true representation of a cross-section of its own strip in some other way than in a bull's-eye design. However, defendant did not do this. It copied the general appearance of plaintiff's bull's-eye design and then copied the cross-section of plaintiff's strip which would, quite naturally, result in a likelihood of confusion.

Whether there is an infringement of a trade-mark does not depend upon the use of identical words or design, "but it is sufficient if one adopts a trade name or a trade-mark so like another in form, spelling, or sound that one, with a not very definite or clear recollection as to the real trade-mark, is likely to become confused or misled. Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774, 775. See: Independent Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc., supra, 205 F. 2d at page 924.

Defendant also urges that plaintiff is estopped in this action because it supplied to Sears-Roebuck & Co. the material which Sears-Roebuck packaged and sold to its customers under its trade-mark, "Harmony House." Sears-Roebuck did not use the mark "Tub-Kove" nor did it utilize the bull's-eye design. It described the contents of its package as "Cove Sealing Strip." But plaintiff does not complain that defendant has entered into competition with it in selling a plastic strip which can be cemented at the junction of a bathtub and wall. It complains that defendant identified its product as "Tüb Cove" in competition with plaintiff's trade-mark "Tub-Kove"; that defendant placed a bull's eye containing an angular design

on its package resembling plaintiff's bull's-eye trade-mark; and that in its bull's-eye design defendant even illustrated the patented cross-section of plaintiff's strip as though defendant's package contained such a strip. The evidence supports the trial court's finding that defendant was guilty of such conduct, and that same constituted both trade-mark infringement and unfair competition.

The issue of unfair competition is of course determined by the law of Illinois. We discussed in some detail our interpretation of the Illinois law in connection with a trade-mark and unfair competition case in Independent Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc., supra. It would unduly extend this opinion to repeat what we said there. Suffice it to say that in our opinion the plaintiff has proved its contention of unfair competition.

Defendant complains of the imposition of $1,500 punitive damages, and that it is required to pay $1,500 attorney fees to plaintiff.

We do not think this is a case where punitive damages should have been allowed. Before filing this suit plaintiff did not notify defendant that it was infringing its trade-marks or that plaintiff charged it with unfair competition. Immediately upon the commencement of this suit defendant ceased the use of "Tub Cove" and the use of the bull's-eye design. The trial court stated that any profits defendant had made were very nominal and that he doubted if plaintiff's damages would exceed $500.

In a case of willful and wanton infringement the trial court has discretion to award punitive damages, but such damages should only be awarded in extreme cases, Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 7 Cir., 116 F.2d 708, 716; such damages "are not a favorite in law," Id., 116 F.2d at page 717. See: Post v. Buck's Stove & Range Co., 8 Cir., 200 F. 918, 43 L.R.A.,N.S., 498. Here the validity of the mark "Tub-Kove" and whether any secondary meaning had attached to that mark were

close questions. That defendant had used entirely different colors on its package than plaintiff had used was a mitigating consideration. Although plaintiff is entitled to an injunction, as determined by the trial court, we think it an abuse of discretion to have allowed punitive damages, and the judgment will be modified by eliminating the allowance of $1,500 as punitive damages.

 The allowance of $1,500 attorney fees is in a somewhat different category. As pointed out by this court, in the Aladdin case, supra, 116 F.2d at page 717, "Counsel's fees necessitated by the tort have been said in some instances to be recoverable as a part of the compensatory damages and in other cases as a part of exemplary damages." In the case at bar the trial court assessed only a part of the attorney fees incurred by plaintiff in this action. We think the allowance of $1,500 to cover part of plaintiff's litigation expenses was proper as compensatory damages.

The judgment will be modified by striking therefrom the assessment of $1,500 as punitive damages, and as thus modified is affirmed.