The YOUTHFORM COMPANY, A Partnership

v.

R. H. MACY & CO., Inc., A Corporation, and Miss Youth Form Creations Corp., A Corporation.

Civ. A. No. 5386.

United States District Court
N. D. Georgia,
Atlanta Division.

June 26, 1957.

Amendment Filed July 3, 1957.

J. Ralph McClelland, Jr., of Matthews & McClelland, and Julius R. Lunsford, Jr., Atlanta, Ga., for plaintiff.

Philip H. Alston, Jr., of Alston, Sibley, Miller, Spann & Shackelford, Atlanta, Ga., Francis C. Browne, of Mead, Browne, Schuyler & Beveridge, Washington, D. C., and Leroy E. Rodman, New York City, for defendant.

HOOPER, Chief Judge.

The plaintiff is The Youthform Company, a Partnership located in Atlanta, Georgia. The principal defendant is Miss Youth Form Creations Corp. of New York, a manufacturer, and also, R. H. Macy & Co., Inc., doing business in Atlanta under the name of Davison Paxon Company. Where the word defendant is used it will refer to the former, and the latter will be referred to as Davison's or as defendant vendee.

The plaintiff and its predecessors since 1923 have been manufacturing ladies foundation garments, principally brassieres. The defendant and its predecessors since 1940 has been manufacturing ladies garments, principally slips.

The plaintiff and defendant are not in competition with each other but confusion has arisen as to the source and origin of the goods of the respective

parties, and plaintiff seeks to enjoin defendant from using in anywise any words which will cause confusion of goods of defendant with the goods of plaintiff, particularly confusion as to plaintiff's trademark "Youthform" written in script, and registered by plaintiff in the year 1946 under the Act of 1920.[1]

The case was pre-tried but not with sufficient thoroughness, and on the trial of the case there was put in evidence huge amounts of periodicals, letters, invoices, and other papers, and the Court had great difficulty in mastering all of the details sufficiently to make accurate Findings of Fact.

Counsel for both sides have stipulated as to a great many facts in the case, their stipulation having been filed of record on March 11, 1957 and is made part of the Findings of Fact in this case, but additional Findings, particularly inferences from the facts in the record, are being made by the Court.

■ As happens in most cases of this kind, the respective parties commenced business a long distance apart, the plaintiff in Atlanta and the defendant in New York, and for some years there was no conflict between the two, but each one gradually extended its own territory until there was a clash. Perhaps the thing which brought on this litigation was certain confusion regarding advertisements recently run in the Atlanta newspapers by the defendant, and certain incidents regarding particular sales at Davison's store of slips manufactured by defendant where allegedly representations were made by the clerks that the slips were manufactured in Atlanta by the plaintiff. The Court is ruling, however, that such incidents of confusion were so slight as not to require any injunction against defendant R. H. Macy & Co., Inc. The advertisements in question will be discussed hereinafter.

The rights of respective parties can only be determined by a detailed and painstaking study of the evidence and by following the course of conduct of each

party from time when such party began business, up until the trial of this case. The Court fully appreciates the responsibility resting upon the Court in making inferences from the facts in the record, for the case is very close on several points, particularly concerning the good or bad faith upon the part of defendant in the use of certain types of advertising and labels. Huge sums expended by the defendant in promoting its business and the large volume to which defendant's business has attained causes this Court to proceed with caution in enjoining the defendant from usages which have prevailed for some years, without injunction proceedings having been brought by the plaintiff, but also done against the written objections made by the plaintiff by a letter in the year 1944. The case is chock full of difficult questions, both of law and fact, which have required many days of research and study upon the part of the Court. A résumé of the activities of both parties will now be given.

(1) *Concerning the Plaintiff.*

In the year 1925 one Dr. Alford sold brassieres in Georgia, using a label containing the words "Youth Form" written in script. Initially he conducted a mail order business practically all over the United States and for the period of time from 1925–1939 inclusive, had gross sales of approximately $41,000 (as shown by statement attached to plaintiff's brief which is hereby made part of the record). From the foregoing it appears his average annual sales over the United States were about $2,700 per year.

The amount of plaintiff's sales prior to 1940 and the location and extent of plaintiff's advertising prior to that year are very important in this case, as indicating whether or not defendant when it began business in 1940 in the State of New York had actual knowledge of plaintiff's business and plaintiff's use of the word "Youth Form". Reference to stipulated Finding of Fact #18 will

1. Now 15 U.S.C.A. § 1051 et seq.

disclose that in the year 1926 plaintiff expended for newspaper advertising in papers located in Georgia, Texas, Kansas, Tennessee, Louisiana and Florida, the sum of $2,200, and during that year plaintiff did a mail order business. In 1927 he spent about $9,000 in newspaper advertisements in the above states, plus states of Alabama, Kentucky, Washington, Michigan, Colorado, Ohio, Missouri, California, Virginia and Pennsylvania in sums ranging from about $25 in Virginia to about $2,800 in Atlanta, Georgia. In 1928 he thus expended about $14,000, in 1929 about $5,300, in 1930 about $9,-500, in 1931 about $7,700, in 1932 about $1,800 and in 1933 about $518. From the above it appears plaintiff's newspaper advertisement since 1931 was steadily on the decrease.

The amount of plaintiff's sales were approximately as follows:

| Year | Amount |
| --- | --- |
| 1926 | $ 2,400.00 |
| 1927 | 12,000.00 |
| 1928 | 16,000.00 |
| 1929 | 4,500.00 |
| 1930 | 8,400.00 |
| 1931 | 8,900.00 |
| 1932 | 4,000.00 |
| 1933 | 2,600.00 |

As to magazine advertising there was a total expenditure of about $7,000 for the years 1927 through 1931, a period of five years, or an average of $1,400 per year. The sales for that period (apparently made by response to advertisements) totaled about $7,900.

During the years 1934 to 1938 inclusive plaintiff's advertising expenditures totaled about $4,600, confined to the states of Georgia, Florida, Tennessee, Alabama and North Carolina, the year 1937 being only $147, 1938 only $442, which shows a falling off from the 1934 advertising figure of $3,300, and indicates a contraction by plaintiff as to both advertising and territory.

In 1939 the year before defendant commenced operation, the plaintiff's sales were $10,303, the plaintiff's advertising $177.

■ According to testimony of defendant's witnesses the defendant did not know when it commenced business in the year 1940 that the plaintiff was using the words "Youth Form" and defendant then, or at subsequent times, began the use of the words "Miss Youth Form" in script, also in block letters, and also used the words "Miss Youth Form, Jr." (Plaintiff's Exhibit #58). Defendants testify they examined various trade journals and did not find that the words used by them were (which they refer to as descriptive words) listed. There is no direct evidence adduced by plaintiff to show knowledge by defendants of any infringement in the year 1940, nor does the Court believe that the extent of business being done by plaintiff, and advertising being done by plaintiff, through the United States sufficient to impute knowledge to defendant of the alleged infringement.

Plaintiff's Exhibit #54 consists of a stack of ledger cards some four inches high showing individual sales in the State of New York, in various communities therein, over a period from 1928 to 1935, and plaintiff's counsel will have opportunity to total these amounts if desired by years and amounts, and the Court will add the summary to these Findings by a footnote. Casual inspection will disclose, however, that they are sales made to individual purchasers in very small amounts (for the most part $2, $3 and $5) and that would not be sufficient to put defendants on notice concerning plaintiff's mail order business and the trademark used therein.

(2) *Objections by Plaintiff.*

■ While the Court has held the evidence does not show defendant had knowledge prior to 1944 as to plaintiff's use of its trademark, it does appear (Defendant's Exhibit #3) that on June 15, 1944 plaintiff wrote defendant a letter stating plaintiff had used its trademark since April, 1925, and stated that the

words "Youth Form" were "registered as our tradename and trademark."

Defendant on June 21, 1944 (Defendant's Exhibit #24) denied previous knowledge of plaintiff's alleged trademark, stating that defendant believed "that there are sufficient differences in our respective trademarks to permit each of our firms to continue to sell goods as we have for the past number of years." The "differences" referred to by defendant perhaps had reference to the fact that plaintiff was using "Youthform" in script, but it is not entirely clear in what way defendant was using such words. There had appeared in the magazine "Women's Wear Daily" in April and June of 1944 an advertisement and in the Cincinnati Inquirer in May, 1944.

Following receipt of the above letter from plaintiff, defendant's advertisement in March, 1945 in Modern Screen carried in block letters the three words "Youth Form Lingerie" and similarly in other magazines. In September 1, 1945 the advertisement in the Columbus, Georgia, Ledger carried in block letters the two words "Youth Form" these advertisements indicating defendant was not using any script resembling plaintiff's script, but using only block letters and separate words.

However, in November, 1946 in Cosmopolitan magazine and in Life magazine defendant used in script the three words "Miss Youth Form" and in December, the same in Woman's Home Companion, followed by the same in July, 1947 in the National Home monthly, and its use on a huge electric sign at Times Square in New York. An advertisement in the New York Times of June 22, 1947 carried in block letters the two words "Youth Form". During 1947 in various local and national periodicals defendant's advertisement appeared both in script and in block letters, and this continued into 1949 (in script, New Castle, Pennsylvania, News, Times Square sign, Sunday News rotogravure and Detroit News; in block letters, Milwaukee Sentinel, November, 1949). However, in May, 1949

there appeared one word "Youthform" in block letters in the Chicago Daily News.

There appears in the record a lack of evidence concerning defendant's advertisements from the year 1949 to 1956. Between February 2, 1956 and April 2, 1956 there appeared in the Atlanta newspapers the three words in block letters "Miss Youth Form" seven times, the same word in script one time, and on April 2, 1956 two words "Miss Youthform" in block letters.

The most blatant violation, however, by defendant of plaintiff's trademark is contained in Vogue magazine, February 1, 1955, p. 76, where there is written in script by defendant the combination word "Youthform" in a manner quite similar to plaintiff's trademark. The same combination word in script had also been used by defendant on bill heads and written by hand in invoices back in 1941, but had evidently been discontinued.

It therefore follows that the defendant, after having actual knowledge of the prior use by plaintiff of the combination word "Youthform" in script deliberately used it in a national magazine in 1955 and the Court must find the defendant did so in bad faith.

(3) *Other Infringements by Defendant.*

As pointed out above, defendant knowingly infringed plaintiff's trademark "Youthform" in script by using the same. It also appears that defendant in the southeastern states used the same, or similar, words in script in such a way as to cause confusion among the trade as to origin of goods. Defendant used the two words "Youth Form" in connection with slips, adding in connection therewith "Reg. U. S. Pat. Off." (see Plaintiff's Exhibit #14), and the four words in script "Miss Youth Form, Jr." (See Plaintiff's Exhibit #58). See also advertisement by Sears Roebuck Company (Defendant's Exhibit #62). Defendant seeks to excuse representation that the trademark was registered,

stating the registration applied to some design patent.

As the Court for reasons stated below is confining the rights of the plaintiff to certain southeastern states, it must be determined whether the use by defendant in such states of the aforesaid words in script are likely to cause confusion.

(4) *Confusion as to Origin of Goods.*

As stated above, plaintiff and defendant are not competitors, as plaintiff primarily sells brassieres and defendant primarily sells slips, etc. However, as shown by many of the advertisements placed in evidence, both brassieres and slips show the female form clad in both a brassiere and a slip, which connects the two together in the public mind. Furthermore, each garment is sold largely in the same stores, though frequently at different counters.

It is no doubt true as defendant contends, that plaintiff's trademark is a weak trademark. On the other hand, the record contains many registered trademarks which have been issued by the Patent Office in connection with women's clothes, which though similar have had enough differences to entitle them to registration. For example:

| February 10, | 1953 | Youthcraft | Defendant's Ex. | #. 6 |
| | 1936 | Maiden Form | " | #18 |
| | 1934 | Youthette | " | #. 9 |
| October | 1937 | Youth-Bra | " | #. 8 |

There is therefore, the probability of confusion between defendant's slips sold under the tradename "Miss Youth Form" or "Youth Form", especially under the one word in script "Youthform" as to plaintiff's brassieres under plaintiff's trademark.

There is also the likelihood of confusion of defendant's goods sold under the aforesaid words even written in block letters, though the likelihood of confusion is not as strong as when script is used.

(5) *Plaintiff's Area of Expansion.*

As plaintiff began business in Georgia in 1923 it is necessary to ascertain in what territory plaintiff established the use of its trademark to such an extent as to pre-empt defendant from infringement in such territory. As Dr. Alford in 1939, in selling to plaintiffs, received only about $3,500, out of which $2,000 covered machinery and good will, the value of the machinery being considerable, it appears very little was paid for good will and as pointed out above, Dr. Alford's volume in sales and amounts paid for advertising at that time was quite low (Finding of Fact #18). However, Dr. Alford had done a mail order business all over the United States. After plaintiffs purchased the business in 1939 (during which year their sales were $10,000, their advertising $177) there was a gradual increase in plaintiff's sales which in 1944 reached some $61,000 but the advertising for that year was only $300, and in 1945-46 a lesser amount for advertising, but in 1946 sales jumped from some $80,000 to $109,000. Somewhere along this date plaintiff put two salesmen on the road selling to retail trade in the following states of the southeast, to-wit: Alabama, Georgia, Florida, North Carolina, South Carolina, Tennessee, Kentucky, Mississippi, Louisiana, Arkansas, Oklahoma and Texas.

Some metropolitan centers in the above states were not covered, but the Court finds in said states plaintiff was continuing to work the trade and to develop more and more business and therefore, under the decisions hereinafter cited it could be said to have established its right to its trademark in such states. The record shows, however, as to other states in the union a perceptible falling off of sales and apparently a cessation in any states other than said thirteen[2] states and therefore, the Court

2. While plaintiff's briefs refer to thirteen states, plaintiff by letter of Apr. 24, 1957 sent to this Court a list of only twelve states, Virginia having been omitted, and

will hold that the plaintiff can not enjoin the defendant from making sales in said outlying states.

(6) *Laches of Plaintiff.*

■ Defendant earnestly contends that plaintiff is guilty of laches amounting to an equitable estoppel against the plaintiff in this case by permitting defendant through the years to do the acts above complained of without earlier seeking an injunction. The material facts on that point are as follows:

Defendant during the period 1944 to 1946 maintained a huge electric sign in Times Square, New York, advertising its slips under the name "Miss Youth Form." Also, published pictures of such sign and same were distributed generally. This was done after 1944 when plaintiff made objections to defendant's alleged infringement. As defendant since 1940 had promoted its business in New York and expended large sums of money in advertising its products, and prior to 1944 had no knowledge of its alleged infringement, and since plaintiff must have known of defendant's advertisement in Times Square during the years 1946–1950, the Court finds that defendant has established its right to use of the three words "Miss Youth Form", or the two words "Youth Form" in connection with defendant's products outside of the thirteen states above named, but not the right to use the combination word "Youthform" at any place.

The foregoing statement of facts is not inclusive of the entire record but is supplemented to stipulated Findings of Fact filed March 11, 1957, and other matters in the record.

The question arises whether plaintiff is guilty of laches in permitting defendant to make sales in the southeastern states using the allegedly infringing trademarks. Record of defendants sales in the southeast and circumstances bringing the same to plaintiff's knowledge are rather incomplete. Defendant's Exhibits #48 to #51 inclusive show

said list was made a part of the record by order of this Court dated June 24,

sales to Atlanta merchants for the periods March to December inclusive, 1941, and there was a renewal of activity about 1956. However, during all this period of time the record is silent as to defendant's advertisements in this area until those pointed out above in the Atlanta newspapers in connection with defendant Davison-Paxon Company. The Court therefore finds plaintiff is not guilty of laches or estoppel in the Atlanta area, nor is there sufficient evidence to show plaintiff guilty of laches in any of the said thirteen states.

Conclusions of Law.

(1) This Court has jurisdiction of the case because of diversity of citizenship of the parties, and the requisite jurisdictional amount being involved. It is not necessary to decide whether or not, as plaintiff contends, the Court has jurisdiction because of the rights asserted by plaintiff under the Lanham Trade-Mark Act, 15 U.S.C.A. § 1051 et seq. Essentially this action is based upon common law principles of unfair competition.

■ (2) Plaintiff used the single word "Youthform" written in script in connection with its products for many years prior to defendant's commencement in business, plaintiff's business covering to some extent the entire United States and being a mail order business accompanied by some national advertising. Regardless of whether plaintiff's trademark "Youthform" in script is a weak or a strong trademark, it did become definitely identified in the minds of the public with plaintiff's product and consequently acquired a secondary meaning even though it should otherwise be descriptive.

Very closely in point is the case of Sunbeam Lighting Company v. Sunbeam Corporation, 9 Cir., 183 F.2d 969, 973, which points out that the word "Sunbeam" is a descriptive word, "a meaningful word, a joyful word, a word of comfort, of life and of health." Similarly

1957. The decree will accordingly cover only twelve states.

it may be said that the words indicating a form or figure of youth carry a pleasant connotation which might cause some females to engage in wishful thinking and to purchase the same in the hope, however vain, that their own form clad in plaintiff's products, might give the appearance of lithesome youth. There are many other cases likewise holding that a descriptive word may acquire a secondary meaning such as the words "Blue Ribbon" (Pabst Brewing Co. v. Decatur Brewing Co., 7 Cir., 284 F. 110) and the words "Gold Medal" (France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304), and others.

(3) Plaintiff's right to this trademark would through actual use, be complete in this case even though plaintiff had not registered the same in the United States Patent Office as shown by the evidence.

The mere fact, however, that plaintiff's trademark "Youthform" written in script as one word, acquired a secondary meaning, and in the minds of the public became associated with plaintiff's products, would not mean that plaintiff obtained any monopoly in the use of such commonplace words as "Youth" and "Form", as such words written in block letters are only descriptive. It therefore follows that the plaintiff is not entitled to an injunction preventing use by defendant in block letters of the two words "Youth Form" or the three words "Miss Youth Form".

(4) As the trademark follows the trade and not vice versa, it is necessary to decide over what area the plaintiff established its right to use of its trademark so as to pre-empt defendant's use therein. Plaintiff began its business in Georgia and for some years did a mail order business throughout the United States, in connection therewith doing a certain amount of national advertising. However, as pointed out in the Findings of Fact, plaintiff began to contract its area of expansion instead of increasing the same, and finally reached the point where plaintiff was doing business in thirteen states through retail outlets, sending its salesmen into those states. Since the advent of greater facilities in traveling and in publicity (including radio and television) some courts in recent years have been inclined to consider the individual state as the unit of area of expansion, and to conclude that when a business house goes into a state it will soon cover the whole state. Other courts, however, consider the facts and circumstances of each case in order to determine whether the plaintiff is sufficiently doing business in any particular area as to be entitled to enjoin the defendant's infringement therein. The facts in the instant case do not enable this Court to apply any rule except as to the thirteen Southeastern states in which the plaintiff through its salesmen is selling to retail merchants. Many years ago plaintiff did a mail order business in practically every state in the Union, and did some national advertising. In recent years, however, its salesmen cover only the thirteen Southeastern states and it cannot be said that outside of those states plaintiff is doing sufficient volume of business as to pre-empt defendant's use of the three words "Miss Youth Form" written in script, and the two words "Youth Form" written in script, in connection with defendant's sales and advertisements. The plaintiff therefore, will be entitled to injunction against the use of the same by the defendant, but the injunction will only cover territory embraced in the said thirteen Southeastern states.

Defendant has not filed any cross-complaint in this case and the Court is expressly refraining from making any Finding of Fact or Conclusions of Law as to the rights of the defendant, except insofar as the rights of plaintiff are concerned. Defendant will not be enjoined, however, in using the aforesaid words in script in connection with national advertising even though it would carry over into the thirteen Southeastern states, for the reason that plaintiff has expended large sums of money in using such script in the electric sign at Times

Square in New York, and in various national publications, and it does not seem equitable at this time to enjoin defendant from a continuation of such national advertisements. However, defendant is restrained from using such words in script in said Southeastern states in connection with local advertisements and sales, and otherwise.

(5) Plaintiff is not entitled to recover special damages from defendant on account of the various acts of infringement by defendant in maintaining the electric sign at Times Square, bearing the words written in script "Miss Youth Form", or national advertising containing the same, for the reason that such use continued over a period of years without defendant taking any legal action. While plaintiff's laches will prevent recovery of special damages during that period, however, it will not prevent plaintiff obtaining injunction as aforesaid. This ruling seems to be in accord with the great weight of authorities in this country. See Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526; and Hanover Star Milling Company v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713.

(6) While plaintiff is not entitled to recover special damages during the period of time that defendant maintained the electric sign and other advertisements in Times Square, using the words "Miss Youth Form" written in script, it appears from the evidence that defendant, with full knowledge of plaintiff's trademark and plaintiff's use of the combination words "Youthform" in script, did use the same on at least one occasion in its national advertising and also, used the same at other times and places. Defendant also ran advertisements in the Atlanta newspapers using the words "Miss Youth Form" in script, in connection therewith showing the female form clad in both brassieres and slips. Subsequently defendant in connection with such advertisements under an asterisk made the explanation that the products were manufactured by defendant in New York.

The courts in this land are not entirely in accord as to the basis on which damages are awarded in such cases, some courts awarding punitive damages, others awarding compensatory damages as attorneys fees. As there exists in this case a basis for awarding both punitive damages and compensatory damages, the Court is awarding $2,500 which will be supported under either theory, though primarily it may be designated as compensatory damages in the nature of attorneys fees. See Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 7 Cir., 116 F.2d 708; Maternally Yours, Inc., v. Your Maternity Shop, Inc., 2 Cir., 234 F.2d 538; Keller Products, Inc., v. Rubber Linings Corp., 7 Cir., 213 F.2d 382, 47 A.L.R.2d 1108; Admiral Corp. v. Penco, Inc., 2 Cir., 203 F.2d 517.

(7) In short, the Court in this case is ruling:

Plaintiff has exclusive right everywhere to the use of "Youthform" in script and defendant cannot use the same anywhere because such has been and in the future would be in bad faith. Plaintiff can prevent defendant's using "Youth Form" and "Miss Youth Form" in script in the thirteen Southeastern states as that is the only territory as to which plaintiff has proven its trade area to have expanded. Plaintiff because of laches, cannot recover certain special damages but may recover compensatory damages and punitive damages. Defendant in all areas may use the two words "Youth Form" and the three words "Miss Youth Form" in block letters, as such words will not cause such confusion in the trade as to entitle plaintiff to an injunction.

Decree will be entered accordingly.

### Decree of Court

Based upon Findings of Fact and Conclusions of Law set forth above, it is Ordered and Decreed as follows:

1— Defendant is permanently enjoined from using in connection with the sale or advertising of its products, the word "Youthform" either written in script or in block letters anywhere in the United States.

2— Defendant is enjoined from using, in connection with the sale or advertisement of its products, the three words "Miss Youth Form" written in script, or the two words "Youth Form" written in script, in the following named Southeastern states, to-wit: Alabama, Georgia, Florida, North Carolina, South Carolina, Tennessee, Kentucky, Mississippi, Louisiana, Arkansas, Oklahoma and Texas, except insofar as national advertisements by defendant might be circulated within said states.

3— It Is Ordered and Adjudged that plaintiff have and recover from defendant the sum of $2,500, together with costs in this action to be taxed by the Clerk.

### Amendment to Decree of Court

It was intended by this Court in the Decree dated June 26, 1957 to enter judgment for $2,500 together with court costs against defendant Miss Youth Form Creations Corp. Injunction granted pertains to both defendants.

Decree is amended accordingly.