**NATIONAL VAN LINES, INC., Plaintiff-Appellant,**

v.

**Alfred E. DEAN and Dean Van Lines, Inc., Defendants-Appellees.**

**No. 13026.**

United States Court of Appeals
Seventh Circuit.

March 15, 1961.

Rehearing Denied April 14, 1961.

Kenneth T. Snow, Chicago, Ill., for appellant, Edward L. Benno, Chicago, Ill., of counsel.

George B. Newitt, W. M. Van Sciver, Bair, Freeman & Molinare, Chicago, Ill., for appellees.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

HASTINGS, Chief Judge.

National Van Lines, Inc. (National), an Illinois corporation, plaintiff-appellant, brought this action for damages and injunctive relief. Named as defendants were Dean Van Lines, Inc. (Dean), a California corporation, Alfred E. Dean, President of Dean, a California citizen, defendants-appellees, and John Mechanic, a Wisconsin citizen and National Van Lines, a Wisconsin corporation. National dismissed the action as to Mechanic and the Wisconsin corporation, and they are no longer parties to this proceeding.

National charged defendants with infringement of its service marks, Registration Nos. 548,018 and 563,950, alleged unfair competition and asked that defendants be found to have violated a prior injunction issued by the United States District Court for the Southern District of California.

The present action was filed and tried in the United States District Court for the Northern District of Illinois, Eastern Division. The district court entered

judgment in favor of defendants, from which judgment this appeal was taken.

The errors relied on for reversal arise out of the failure of the trial court to grant National any relief.

All parties to this action are engaged in the business of moving household goods by motor van in interstate commerce.

The California action was brought by National (plaintiff here) against Alfred E. Dean (one of defendants here), trading under the firm name and style of National Transfer & Storage Co. That proceeding contained counts for breach of contract, trade-mark infringement and unfair competition. After the trial court entered judgment for defendant on all counts, the Ninth Circuit, on appeal, found unfair competition and reversed on that issue. National Van Lines v. Dean, 9 Cir., 1956, 237 F.2d 688.

A summary of the factual background leading up to the present litigation is set out in that opinion:

"Appellant, National Van Lines, Inc., is an Illinois corporation. It engages in the nation-wide business of moving household goods by motor van. The forerunner of the present company was started in 1928, under the name 'National Shippers & Movers.' In about 1930, the company began using this name, placed horizontally on a shield with vertical stripes, as a service mark.

"In June, 1934, the business was incorporated under the name 'National Van Lines, Inc.' The service mark was then changed to its present form. It shows the new name in blue or black, between heavy red or black lines, across the middle of a shield. The upper part of the shield is in blue or black, across which the words 'Nation Wide' appear in white. The lower part of the shield, outlined in blue or black, consists of red and white, or black and white, vertical stripes.

"Late in October, 1944, appellant and appellee, Alfred E. Dean, entered into negotiations looking to the execution of an agency contract. In contemplation of this arrangement, Dean began a local moving van business in the San Diego Bay area, under the name 'National Van & Storage.' The contract was signed on November 7, 1944. Under its terms, appellee undertook to book interstate shipments for appellant on a commission basis. The business so booked was to be handled by appellant under the latter's name.

"Appellee, who was permitted to continue his local moving business, agreed in this contract that he would not use the names 'National Van,' 'National Van Lines,' or 'National Van Lines, Inc.' As soon as the contract was executed, Dean accordingly changed his firm name to 'National Transfer & Storage Co.'

"On May 17, 1948, appellant filed an application for the registration of its service mark, described above, on the principal register of the United States Patent Office. The application states that no claim is made to the words 'Nation Wide' and 'Van Lines, Inc.' apart from the mark as shown. This mark was registered on September 11, 1951. On January 4, 1952, appellant filed a similar application to register the service mark 'National Van Lines' without the shield. This was registered on September 9, 1952.

"In November, 1949, Dean adopted the service mark which, appellant asserts, infringes upon the latter's mark, constitutes unfair competition, and amounts to a breach of the agency contract. In Dean's mark, the words 'National Transfer & Storage,' in blue or black, are superimposed across the middle of an outline map of the United States. The word 'National' is emphasized by the use of shaded block letters. The upper part of the outline map is shown in light blue or gray. The lower part consists of red and white, or black and white, vertical stripes,

across which the words 'Coast to Coast via Motor Van' appear.

"The agency contract was canceled by Dean on February 20, 1950. He immediately changed the character of his business from that of a local mover to a nation-wide mover. His business increased from a four-van local moving business, grossing $8,900 in 1944, to an eighty-three-van nation-wide business, grossing $688,000 in 1951. Thus, appellant and appellee became, and now are, direct nation-wide competitors." Id., at pages 690–691.

On remand to the California district court, judgment was entered holding National's registered mark No. 548,018 good and valid in law and finding unfair competition. Alfred E. Dean and all others acting in concert with him were permanently enjoined and restrained as follows:

"6. Defendant, his agents, servants, employees and all those in concert with him, are hereby permanently enjoined and restrained from:

"a. Conducting business or rendering services related to or comprising moving household goods by motor van, under the trade name or service mark, the principal characteristic of which is the use of vertical stripes in red and white, or black and white, below a name which begins with the word 'National' or any colorable imitation thereof.

"b. Otherwise competing unfairly with plaintiff in rendering services comprising moving household goods by motor van."

It was stipulated in the present action:

"16. That defendant began to identify its moving business by the name 'Dean Van Lines' six months prior to the trial of the cause in the [California] District Court referred to in paragraph 15 and had discontinued completely the use of the name 'National Transfer and Storage Company' prior to the issuance of the injunction referred to in paragraph 15; and defendant has not used the name 'National' in any form to identify its services since the injunction issued."

Plaintiff's marks, Registration No. 548,018, registered on September 11, 1951, and Registration No. 563,950, registered on September 9, 1952, are described in the Ninth Circuit opinion, supra. Plaintiff's mark, Registration No. 699,573, issued after the present appeal was filed. It covers a service mark similar to No. 548,018, except that there is no wording thereon.

Presently Dean identifies its services by a mark consisting of the name 'Dean Van Lines' superimposed on an outline map of the United States, the map carrying alternate red and white stripes or black and white stripes in the lower portion below the name. Also, below the name appear the words "World Wide Service."

Dean also uses an ancillary mark "STO-PAK" superimposed on an outline similar to the one above described. It appears that it is always used in the proximity of "Dean Van Lines."

As stated in National Van Lines v. Dean, supra, at page 693:

"[National] is not seeking to protect the word 'National' or vertical stripes, considered separately, as service marks. *It is the composite of the word plus the stripes which [National] here defends.* * * * That composite mark, in our opinion, is sufficiently distinctive to deserve judicial protection." (Emphasis added.)

In plaintiff's application for its service mark Registration No. 548,018, it was expressly stated, "No claim is made to the words 'Nation Wide' and 'Van Lines Inc.' apart from the work as shown."

Title 15, U.S.C.A. § 1114(1) in pertinent part provides:

"Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imita-

tion of any registered mark in connection with the sale, offering for sale, or advertising of any * * * services * * * which * * * use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such * * services; * * * shall be liable to a civil action by the registrant * * *."

Title 15, U.S.C.A. § 1127 defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." "Colorable imitation" is defined as including "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive purchasers."

On the issues of infringement and unfair competition, the ultimate question to be determined is whether purchasers of moving services are likely to be confused or mistaken or deceived by reason of Dean's use of its corporate name superimposed on an outline map of the United States, including red and white or black and white stripes below the name, in competition with National's use of its corporate name superimposed on a shield, including alternate red and white or black and white stripes below the name.

National's first two principal contentions charge that the trial court erred in:

"1. Finding that the only common characteristic of the respective marks is the use of vertical stripes in either black and white, or red, white and blue;

"2. Finding that the stripes of plaintiff's composite mark apart from the mark as a whole have not acquired a secondary meaning and that plaintiff has no exclusive right in the use of stripes per se in connection with moving services."

During the pendency of the present appeal, this cause was remanded to the district court to consider newly discovered evidence brought into existence by the issuance of National's Registration No. 699,573 subsequent to the entry of the judgment appealed from. National asserts that the trial court erred in finding that this evidence warranted no change in its decision.

Beginning with the holding in Barbasol Co. v. Jacobs, 7 Cir., 1947, 160 F.2d 336, 340, repudiating the rule laid down in Rytex Co. v. Ryan, 7 Cir., 1942, 126 F.2d 952, 954, it is now well established in trade-mark infringement cases that it is not necessary to show instances of actual confusion but that a plaintiff is only required to show a likelihood of confusion. Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 1948, 170 F.2d 958, 960; Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 1950, 179 F.2d 265, 270; Independent Nail & Packing Co. v. Stronghold Screw Products, 7 Cir., 1953, 205 F. 2d 921, 925; Keller Products v. Rubber Linings Corp., 7 Cir., 1954, 213 F.2d 382, 386, 47 A.L.R.2d 1108; G. D. Searle & Co. v. Chas. Pfizer & Co., 7 Cir., 1959, 265 F.2d 385, 387, 388.

The ultimate standard in determining whether there is an infringement of a trade-mark "does not depend upon the use of identical words or design," but rather "it is sufficient if one adopts a trade name or a trade-mark so like another in form, spelling, or sound that one, with a not very definite or clear recollection as to the real trade-mark, is likely to become confused or misled." Keller Products v. Rubber Linings Corp., 7 Cir., 1954, 213 F.2d 382, 387, 47 A.L.R.2d 1108; Independent Nail & Packing Co. v. Stronghold Screw Products, 7 Cir., 1953, 205 F.2d 921, 924; Northam Warren Corporation v. Universal Cosmetic Co., 7 Cir., 1927, 18 F.2d 774, 775.

Infringement is not to be determined on the basis of a side-by-side visual comparison; "we must determine the purchasing public's state of mind when confronted by somewhat similar trade names *singly* presented." G. D. Searle & Co. v. Chas. Pfizer & Co., 7 Cir., 1959, 265 F.2d 385, 388; Square D Co. v. Sorenson, 7 Cir., 1955, 224 F.2d 61, 64;

Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 1950, 179 F.2d 265, 270.

■■■ The issue of unfair competition is determined by the law of Illinois. Keller Products v. Rubber Linings Corp., 1954, 7 Cir., 213 F.2d 382, 387. And, as Judge Duffy stated in Independent Nail & Packing Co. v. Stronghold Screw Products, supra, 205 F.2d at page 926:

"We think that the test under the Illinois law is whether the adoption and use of a name by defendant is likely to cause confusion in the trade as to the source of products, or is likely to lead the public to believe that the defendant is in some way connected with the plaintiff. * * [It is] agreed that in Illinois palming off is no longer necessary to sustain a cause of action for unfair competition."

It is clear that the Ninth Circuit, in the California case, held National's mark to be valid in its *composite form* and in a footnote 6 expressly stated that its ruling did not apply to Dean's mark now before us. National Van Lines v. Dean, supra, 237 F.2d at pages 692–693.

■■■ In its reply brief filed in the present appeal National now grounds its case on "defendant's wrongful uses of striped designs which are colorable imitations of plaintiff's striped designs." The validity of National's mark in its entirety is not seriously questioned, but it does not follow that it may dissect its mark and claim a monopoly in its use of vertical stripes in colors or in black and white. Life Savers Corp. v. Curtiss Candy Co., 7 Cir., 1950, 182 F.2d 4, 9. Its mark was arranged in composite form and as such constituted a symbol. Under such circumstances it must be considered in its entirety, not by separating its component parts. James Heddon's Sons v. Millsite Steel & Wire Works, 6 Cir., 1942, 128 F.2d 6, 8. "The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail." Beckwith's Estate, Inc. v. Com'r

of Patents, 1920, 252 U.S. 538, 545–546, 40 S.Ct. 414, 417, 64 L.Ed. 705.

Aside from a stipulation relating to National of Wisconsin subsequently mentioned, the only evidence National can point to in the record in this case which might establish the likelihood of confusion in the mind of the viewer is certain photographic exhibits. It claims "the impressions created by the vertical lines are manifest." The trial court did not think so. It found that "the stripes of plaintiff's composite mark * * * apart from the mark as a whole have not acquired a secondary meaning and that plaintiff has no exclusive right in the use of stripes per se in connection with its moving services." We agree.

In Life Savers, supra, a case dealing with the use of colored stripes as a background on a candy package, we said, 182 F.2d at page 8:

"A new competitor is not held to the obligations of an insurer against all possible confusion. He is not obligated to protect the negligent and inattentive purchaser from confusion resulting from indifference. * * * 'Instead, they are required only to mark or designate them in such manner that purchasers exercising ordinary care to discover whose products they are buying will know the truth and not become confused or mistaken.'"

■■■ We are not unmindful of our admonition that "[o]ne entering a field of endeavor already occupied by another should, in the selection of a trade-name or trade-mark, keep far enough away to avoid all possible confusion," in Northam Warren Corporation v. Universal Cosmetic Co., 7 Cir., 1927, 18 F.2d 774, 775, and repeated in G. D. Searle & Co. v. Chas. Pfizer & Co., 7 Cir., 1959, 265 F.2d 385, 387. Likewise, it is well to repeat that in measuring the conduct of an alleged infringer, we may look to see whether " 'principles of old-fashioned honesty' were followed." Independent Nail & Packing Co. v. Stronghold Screw

Products., 7 Cir., 1953, 205 F.2d 921, 924.

However, in this case we are faced with the unequivocal findings of the trial court favorable to Dean. Our examination of the record reveals substantial support for these findings and compels us to hold that they are not clearly erroneous. We have read the unpublished memorandum opinion of the trial court and find that it recognized and applied the applicable legal standards set out in the cases we have reviewed. "In such a situation we are not at liberty to disturb the findings of fact unless we can say as a matter of law that the court's interpretation of the evidence is clearly erroneous." Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 1948, 170 F.2d 958, 960.

We hold that the trial court did not err in finding there was no infringement of National's marks and that there was no unfair competition with National.

We have examined the record relating to the alleged violation of the California injunction by defendants. This claim arises out of an agency agreement between Dean and National Van Lines (of Wisconsin) whereby National of Wisconsin was permitted to use Dean's service marks in conjunction with its name on its trucks and in its advertising. It is stipulated that there were instances of actual confusion between National and National of Wisconsin while the latter was Dean's agent.

However, it is undiputed that the agency contract between National of Wisconsin and Dean was canceled on May 20, 1957 and that National subsequently purchased the trademark rights of National of Wisconsin and dismissed this action as to that corporation and its chief executive officer (Mechanic) on July 18, 1957.

We think this issue is now moot. In any event, we find nothing in the record showing that defendants violated the California injunction in any manner as a result of their business dealings or relationship with National of Wisconsin and Mechanic.

We deem it unnecessary to review the record relating to the use of various components of National's marks over a period of many years by numerous business concerns, some of which were in the transportation business similar to that of National.

The trial court reached a correct result in this case. The judgment of the district court is

Affirmed.