**SQUARE D COMPANY, Plaintiff-Appellee,**

v.

**Bliss SORENSON, Karl A. Dormeyer, and Albert F. Dormeyer, doing business as Dormeyer Industries, Defendants-Appellants.**

**No. 11338.**

United States Court of Appeals
Seventh Circuit.

June 23, 1955.

Rehearing Denied July 28, 1955.

Joseph Keig, Sr., Chicago, Ill., for appellant.

Thorley Von Holst, Sidney Neuman, Chicago, Ill., for appellee. Myron J. Seibold, Detroit, Mich., of counsel.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This action was brought to obtain an injunction and damages for an alleged infringement of a trade mark. The district court granted the injunction and ordered the case referred to a master to determine damages and take an accounting. The errors relied on arise in respect to the findings of fact and conclusions of law upon which the court based its decree against the defendant, from which this appeal was taken.

The trade mark sued on by plaintiff is:

The accused mark of defendant follows:

In 1914, plaintiff's predecessor, Detroit Fuse & Manufacturing Company, obtained the trade mark shown above, No. 103,050, which was renewed March 16, 1935. It has been used continuously since that time. For over 40 years it has been known in the trade as "Square D". So important did it become to the plaintiff that the name of the corporation was changed to the Square D Company. It has been universally known in the trade as denoting the products manufactured by Square D Company.

Plaintiff has for many years carried on a very extensive business in the manufacture and sale throughout the United States and foreign countries of electrical products of great diversity, including electrical and control equipment. Plaintiff's products are, and for forty years have been, sold under said registered trade mark.

Finding of fact 11 is that, in the ten-year period from 1944 through 1953 alone, over $446,000,000.00 worth of products were sold under plaintiff's trade mark in suit, and that in the same period over $4,000,000.00 was spent in advertising and promotion of such products.

According to finding of fact 13, plaintiff's D within a square mark applied to electrical equipment is distinctive, fanciful, arbitrary, and unique; and, by reason of plaintiff's persistent efforts and the expenditure by it of large sums of money in advertising and promoting its products, the high quality of said products and the long continued exclusive use of the mark enjoyed by plaintiff, the mark had acquired, prior to 1952, a distinctiveness and meaning in the trade, identifying plaintiff's products and identifying plaintiff as the source where such products originated.

The defendant partnership has made and sold for the last eight and a half years, and now makes, and sells in interstate commerce, electrical devices, principally solenoids, magnet coils and transformers. Such products are also manufactured and sold by plaintiff. Prior to 1952 defendant partnership was known as Dean W. Davis & Co. and it had used successively this mark:

$$D$$
$$D \ W \ D$$
$$D$$

and the mark: "D I" with two parallel lightning flashes striking through those letters.

In 1952 defendants changed the name of their partnership to Dormeyer Industries, and then selected the accused mark from fourteen different marks developed by an advertising man. The accused mark is used on the cover and various pages of defendant's catalogue. It is also cut into products manufactured by defendants.

Plaintiff admits that the marks
$$D$$
"D W D" and "D I" are noninfring-
$$D$$

ing, but contends that the last mark chosen is infringing and was deliberately selected by defendants.

■ 1. The defendant partnership bases its defense chiefly on the contention that its products are "tailored to its customer's needs according to specifications * * *." From this premise it draws the deduction that possibility of confusion between defendants' products and plaintiff's cannot exist. The record shows, however, that the premise is by no means true in all instances. There is some evidence that defendants' products bearing the accused mark were sometimes sold directly to the public and not ordered to specification.

The district court found, in part:

"18. In the accused mark the lines about the 'D' simulate a square, and the similarity in appearance between plaintiff's D within a square mark and the accused mark is such that ordinary visual observation by a purchaser or user might well fail to apprise him of the different sources of manufacture of products bearing the marks.

"19. The similarity in appearance of the accused mark and plaintiff's mark is such as to be likely to cause confusion or mistake or to deceive purchasers as to the source or origin of goods bearing the accused mark. The use by defendants of the accused mark in defendants' catalogues and price lists, and upon illustrations of electrical components appearing in said catalogues, is also likely to cause confusion or mistake as to the source or origin of the goods so advertised or offered for sale."

In its decree the district court adjudged:

"That defendants, by the use of a capital 'D' within a rectangle upon solenoids manufactured by defendants and sold by them in interstate commerce and otherwise, and in and upon catalogues and other printed advertising matter offering solenoids, magnet coils, and transformers for sale, have infringed plaintiff's registered trade-mark as well as its common law trade-mark.

"That by such use of the capital letter 'D' within a rectangle defendants have also competed unfairly with plaintiff."

Three witnesses for plaintiff, Privat, Greene and Sedgwick, each testified that he would take the accused mark to indicate a product of plaintiff. They were cross-examined and evidently the district judge believed them. Defendants adduced no contrary evidence. The district judge also had before him for visual inspection the respective marks.

■ The trial judge heard and saw the witnesses for the respective parties testify in open court, and had a better opportunity than we have to judge of their credibility. Under these circumstances we cannot say that his findings of fact are not supported by the evidence.

■ Defendants contend that the four lines enclosing the D in their mark do not constitute a rectangle or a square. Actually, in a geometric sense, defendants are literally correct. However, the person in the trade who is buying electrical appliances is not necessarily a geometrician. From his practical inspection of electrical appliances offered for sale he sees a capital D, surrounded by two vertical lines and two horizontal lines. That one design encases the D in an unbroken square, while another encloses a D in a rectangle punctuated at its four corners by flashes of lightning, is a difference which might well escape him. If he detects the difference, it is very likely to merely confuse him. The salient feature in the marks used by plaintiff and defendant respectively, which the ordinary buyer is likely to remember, is a capital D resting within four straight lines. He is less likely to recall whether the four-sided figure enclosing the D is a broken rectangle or a perfect square. The result is that the use of the accused mark is likely to cause confusion in the market place. This constitutes a violation of the Trade Mark act.[1] Keller Products, Inc. v. Rubber Linings Corp., 7 Cir., 213 F.2d 382; Barbasol Co. v. Jacobs, 7 Cir., 160 F.2d 336.

■ Infringement or similarity is not to be judged solely by side-by-side comparison. Albert Dickinson Co. v. Mellos Peanut Co. of Illinois, 7 Cir., 179 F.2d 265.

There was no error in awarding plaintiff an injunction against further infringement.

■ 2. Plaintiff contends that, in view of what it terms the willful and deliberate nature of defendants' conduct, an accounting of damages is warranted.[2]

Plaintiff, in contending that the infringement was deliberate and willful, urges the following points:

---

1. 15 U.S.C.A. § 1114(1).

2. 15 U.S.C.A. § 1117 provides, in part: "When a violation of any right of the registrant of a mark registered in the

Patent Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1113(1) (b) of this title, and subject

(a) Defendants selected the infringing mark from fourteen suggestions submitted to them by an advertising agency.

The record being devoid of any showing as to what the other thirteen suggestions were, one cannot logically draw from this incident the inference which plaintiff draws.

(b) Defendant Albert F. Dormeyer admitted general knowledge of plaintiff's trade mark when defendants selected and adopted the infringing mark, and admitted that he used the non-infringing "D I" on his stationery before he adopted the accused mark. Defendants never explained why they adopted the accused mark in preference to the non-infringing "D I" mark.

We are not convinced that this evidence supports the charge of deliberate and willful infringement.

(c) Defendants' price list bears the accused mark above the word "DORMEYER" which appears in letters at least twice the size of the "D" in the mark, followed by the words "DORMEYER INDUSTRIES — Solenoids — Coils — Transformers, 3418 Milwaukee Avenue, Chicago 41, Illinois."

The relatively greater emphasis on the word "DORMEYER", rather than upon the accused mark, tends to directly rebut the contention of plaintiffs that defendants' infringement was deliberate and willful.

(d) Hodas' Automatic Service Supply Company in Detroit sold a package containing a solenoid made by defendants, the solenoid, but not the package, having the accused mark appearing upon it.

This incident standing alone does not constitute substantial support for plaintiff's general charge of de-

liberateness and willfulness on the part of defendants.

(e) When, prior to filing suit, plaintiff notified defendants of their infringement of plaintiff's trade mark and demanded that defendants cease to use the accused mark, defendants refused to discontinue such use.

The record does not show when plaintiff's demand was made other than that it was prior to filing suit. It may have been weeks before, or it may merely have been a formal demand made immediately prior to filing suit, in which case defendants would have had no opportunity to comply with said demand. Moreover, if defendants in good faith believed they were not infringing plaintiff's trade mark, their continued use of the accused mark would not in itself make them guilty of "deliberate and willful" infringement.

It will be noted that there is no evidence of any actual confusion resulting in a sale of any of defendants' products to one who believed he was buying plaintiff's product. Plaintiffs failed to prove fraud or a palming off by defendants of any article to persons who believed they were buying plaintiff's product. While the absence of fraud or palming off does not undermine a finding of unfair competition, Champion Spark Plug Co. v. Sanders, 331 U.S. 125, at page 130, 67 S.Ct. 1136, 91 L.Ed. 1386; Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 493–494, 42 S.Ct. 384, 66 L.Ed. 729; G. H. Mumm Champagne v. Eastern Wine Corp., 2 Cir., 142 F.2d 499, 501, the character of the conduct giving rise to the unfair competition is relevant to the remedy which should be afforded. An accounting will not be or-

---

to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's

sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. * * * "

dered merely because there has been an infringement. Champion Spark Plug Co. v. Sanders, supra, 331 U.S. at page 131, 67 S.Ct. 1136. As under the trade mark act of 1905, under the present act [3] an accounting has been denied where an injunction will satisfy the equities of the case. Champion Spark Plug Co. v. Sanders, supra. The same is true in the case of unfair competition. Straus v. Notaseme Co., 240 U.S. 179, 181–183, 36 S.Ct. 288, 60 L.Ed. 590. We consider it material that the bulk of defendants' appliance business is conducted through sales to its customers based upon specifications. From all the facts we find that the likelihood of damage to plaintiff or profit to defendants due to any misrepresentation seems slight, and that in view of these various circumstances the "injunction will satisfy the equities of the case." Champion Spark Plug Co. v. Sanders, supra, 331 U.S. at page 131, 67 S.Ct. at page 1139.

To the same effect is J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir., 120 F.2d 949, at page 958, where the court said:

"The instances of palming off proved were not instances of actual customer deception. * * * They were sufficient to entitle plaintiff to an injunction, so that probable deception of actual customers would not occur. But, in order to subject defendant to the burden of a reference, plaintiff was required to satisfy, the court of its ability to establish some actual, material customer deception. The extent of the damages would necessarily be a matter for determination on the reference, but the certainty of damage must, as in any other case, have been foundationally established in the hearing before the court. In a case of unfair competition, the court will endeavor to adapt its relief to the general equities of the particular situation, as nearly as it is possible to do so."

In Century Distilling Co. v. Continental Distilling Corp., 3 Cir., 205 F.2d 140, at page 144 the court said:

"We agree that in a proper setting—one in which there could be no showing of pecuniary harm to the infringed—it may be the appellate court's duty to vacate an order of accounting, even after fifteen years' litigation."

In Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F.2d 64, at page 71 the court said:

"There will be no accounting ordered as prayed in paragraph eleven, for the reason that no actual wrongful intent to injure appellant has been shown, and no substantial damage seems yet to have been inflicted upon appellant from the use by appellee of the trade-mark 'Portina Champs.'"

Accordingly we conclude that the decree, insofar as it grants an injunction, should be affirmed with costs and in all other respects reversed. It is so ordered.