**HOWARD INDUSTRIES, INC., a corporation, Plaintiff,**

v.

**RAE MOTOR CORPORATION, a corporation, Defendant.**

**Civ. A. 6396.**

United States District Court
E. D. Wisconsin.
Sept. 25, 1958.

Heft & Coates, Racine, Wis., for plaintiff.

Foley, Capwell & Foley, Racine, Wis., for defendant.

GRUBB, District Judge.

This action is brought for alleged breach of an agreement settling a patent infringement case.

The principal defenses relied upon are: (1) That the settlement agreement has not been breached; (2) that if it were breached, plaintiff is estopped from prosecuting this action because of laches; and (3) a defense which was first asserted on the trial, i. e. that if the contract is interpreted as plaintiff would interpret it, it is void as against public policy as creating an unreasonable restraint of trade.

In August 1945 plaintiff, Howard Industries, Inc., hereinafter referred to as Howard, purchased the assets, including the patents, of the Electric Motor Corporation, hereinafter referred to as E-M-C. E-M-C had been engaged in the manufacture of fractional horsepower electric motors, which business Howard carried on after the sale in August, 1945.

In the winter of 1945–46, defendant, Rae Motor Corporation, hereinafter referred to as Rae, was formed and Messrs. A. J. Peterson, I. H. Dunham, H. P. Rothering, and E. K. Hansen, all former employees of E-M-C, became Rae's key personnel. By early Spring, 1946, Rae had on the market a fractional horsepower motor.

In May, 1948, Howard commenced a patent infringement action against Rae.

On August 15, 1949, Howard and Rae entered an agreement in settlement of Howard's patent infringement suit. The pertinent parts of the agreement are as follows:

"Whereas, there is pending in the United States District Court for the Eastern District of Wisconsin, an action in which Howard, as plaintiff, charges infringement of its patent No. 2032084 by Rae and Dunham, Defendants, said action being identified as Civil Action No. 4554, wherein issue has been joined; and

"Whereas, apart from any cause of action pleaded in said litigation, *Howard complains that the shells or casings of motors made by Rae too closely resemble in appearance those previously made by Howard.*

"Now, Therefore, in consideration of the agreement of the parties hereinafter set forth, it is agreed as follows:

"*First:* Rae and Dunham covenant and agree:

"1. That the brush holder and the contact slip of the electric motor first manufactured and sold by Rae are acknowledged to have infringed the patent in suit No. 2,-032,084.

"*Second:* Rae Covenants and agrees:

"That as soon as its present stock of motor shells or casings is used up *it will adopt a different shell or casing for its motor either like Exhibit A attached hereto or some other casing design which is not confusingly similar in appearance to the casing design now embodied in the E. M. C. motor.* The present stock of Rae's motor casings being not in excess of 3500.

648

*"Third:* Howard covenants and agrees:

"1. That Howard waives any claim or right it might have or make now or in the future based upon infringement by the motor currently manufactured by Rae upon Patent No. 2,032,084.

"2. That it does hereby acknowledge the receipt of Thirty-five Hundred ($3500.00) dollars to it paid by Rae.

"3. That in consideration of the said Thirty-five Hundred ($3500.00) dollars to it paid by Rae and of the agreement of Rae and Dunham herein set forth it does for itself, its successors and assigns hereby remise, release and forever discharge Dunham and Rae of and from all claims, controversies and demands accruing to the date hereof, jointly or severally against Dunham or Rae or either of them and based upon matters set forth in the complaint of this action or upon alleged simulation of casing design.

"4. *That a shell or motor casing design, of the type indicated by the attached print marked 'Exhibit A' is adequately differentiated in appearance from the motor shell or casing design of Howard.*

*"Fourth:* It is mutually covenanted and agreed by and between the parties hereto that the aforesaid Civil Action No. 4554 shall be dismissed without costs to either party or parties, upon the written stipulation of the parties or their counsel being filed in the United States District Court of the Eastern District of Wisconsin." (Emphasis supplied.)

At the time this settlement agreement was entered, and prior thereto, Rae was using a motor shell or casing which resembled Howard's casing except in the method of attaching the brush holders to the end of the shell. Plaintiff's brushes were attached to the shell by crimping. Those of defendant Rae were welded.

Shortly prior to the entry of the settlement agreement, Rae ordered for manufacture a casing identical in appearance to its previous shell except that each end of the new casing had a groove running around its periphery. This casing is marked "Exhibit 6".

Although defendant had ordered these casings prior to the settlement agreement, this was not known by plaintiff until after the agreement, and nothing was disclosed to plaintiff concerning the fact that defendant, notwithstanding Exhibit A attached to the contract, had ordered and intended to market a casing identical to its old casing excepting for the small groove on the ends.

On August 25, 1954, Howard commenced this suit alleging breach of the settlement agreement.

The first issue before the court is whether the groove or indentation running around the ends of Rae's casings is enough of a distinguishing feature to satisfy the terms of the settlement agreement.

Exhibit A is distinguishable from Howard's casing in two respects. The first and primary distinction is that Exhibit A shows a raised wide band located in the middle of the casing and encircling the cylinder. The second difference is that Exhibit A has the same groove treatment of its end bells that was adopted by defendant Rae and displayed in Exhibit 6.

There is attached hereto a photostatic copy of Exhibit A which was made a part of the contract. Unfortunately this photostat does not show as plainly as Exhibit A that the center band is raised, but the photostat does show the general appearance. Exhibit 5 was an exhibit made up to show the appearance as it would be had Exhibit A been followed by Rae.

Exhibit A

S. N. Tuller

A. S. Morsell Jr.

---

The parties agree that a casing designed like Exhibit A would not fit many of the applications in which these motors are used.

Howard contends from this that one of the purposes of the contract was to eliminate interchangeability, so that Howard would have a head start in the market until manufacturers using this type motor would change the design of their applications to fit Rae's new casings.

Rae asserts that although a casing designed like Exhibit A would not be interchangeable with Howard's casing, the contract does not require Rae to adopt a casing which is not interchangeable, but only one adequately differentiated in appearance.

■ The terms of the contract refer to a change in appearance. Rae agreed to make a shell which would be adequately differentiated in appearance so that its casing would not be confusingly similar to Howard's. These words are unambiguous and cannot be extended to require Rae to change its casing design in such a way that its motors could not be used by many of its present customers.

Counsel for Rae further contends that Exhibit A was mentioned in the agreement as a shell which Rae could adopt, and a design which was acceptable to Howard because it was adequately differentiated in appearance from Howard's.

The court agrees with this interpretation. The parties put significant emphasis on the drawing attached to their agreement. Exhibit A was more than a design which Rae could adopt. It was an example of a design that was sufficiently differentiated in appearance.

This drawing, read as a part of the agreement, demonstrates that the parties were thinking in terms of a very substantial change in the appearance of Rae's casing and must be interpreted as meaning that Rae would adopt a shell or casing design *substantially* different in appearance from Howard's casing. There are numerous other casing designs which could have been adopted which would not have been confusingly similar in appearance and which would, in fact, have been interchangeable in many of the applications.

During the trial, Rae contended its shell was adequately differentiated and in support of its position paraded five "expert" witnesses to the stand, whose testimony, in brief, was that Howard's and Rae's casings are not confusingly similar in appearance.

Rae's experts gave their testimony while comparing the parties' casings held in juxtaposition. However, similarity is not determined by a side-by-side comparison, since the determination of similarity is to be made with respect to the impression made on the ordinary purchaser by recollection, and purchasers do not always see the items in juxtaposition, nor do they stop to analyze, but are governed by appearance and general impressions. Cf. Square D Co. v. Sorenson, 7 Cir., 1955, 224 F.2d 61. The court finds that many persons would not even observe, and few would be likely to remember these small grooves.

Although the court has ample testimony to determine that when the two casings are held side-by-side, experts in this field could tell them apart, this evidence does not establish that the parties' customers would not be confused when viewing such casings individually. The record does disclose that Rae's customers have shipped Rae's casings back to Howard for repair. And even more conclusively, the casings themselves establish a total effect of overwhelming similarity.

These "expert" witnesses all referred to two differences in appearance: (1) The method of attachment of the brushes, which was no change whatever; and (2) the crimp at the end of the casing. Defendant's witness Ganzert, when asked to point out the visual differences, replied: "The method of fastening brush holders to the end bell is the most prominent distinctive feature. Secondarily is the ridge at the end of the end bells." (Tr. p. 307) Therefore, the most prominent distinctive feature of difference in his opinion was not anything that was changed after the settlement agreement, but was something that existed and that the parties had in mind when they entered the settlement agreement and when Exhibit A was prepared, signed by both counsel and attached to the contract of settlement. It should be noted that one of the recitals of the settlement agreement was that Howard complained that the shells or casings made by Rae too-

closely resembled in appearance those made by Howard.

■ It is the finding of this court that Rae has neither complied with the requirement that it adopt a casing which is not confusingly similar in appearance, nor has it adopted a casing which is adequately differentiated in appearance.

■ Rae asserts the defense of laches. Prior to the commencement of this action there was an action commenced in the Circuit Court of Racine County, Wisconsin on this same cause of action. That action was dismissed without prejudice before this action was commenced. The court finds that plaintiff acted with reasonable diligence and that at no time was the defendant deceived or prejudiced and at no time did the defendant change its position in reliance upon any act or omission of the plaintiff.

On June 26, 1958 the court asked counsel whether a contract which prohibits one party from making an object confusingly similar in appearance is a reasonable restraint of trade. It would appear from counsel's brief following oral argument that Rae would choose to have the court decide the question both ways. On pages 17 and 47, Rae's brief asserts that it never contended that this agreement was invalid and it now contends it is valid. Apparently counsel was urging this position for the purpose of obtaining the interpretation that Rae could make any shell which was not confusingly similar to Howard's. But when asked whether that interpretation would be a reasonable restraint of trade, counsel contends such a contract would be void and unenforceable. (Br. p. 51) Rae cites in support of this proposition American Fork & Hoe Co. v. Stampit Corporation, 6 Cir., 1942, 125 F.2d 472. This case and the line of cases in which it stands, are distinguishable from the case now before the court.

This is not a suit based upon the bare complaint of similarity in design, but a suit for breach of a contract in which valuable consideration was given in exchange for Rae's agreement that it would adopt a different design.

■ Rae has not cited a case, nor has the court found a case in which a contract prohibiting a party from making a product confusingly similar in appearance was held either unenforceable or an unreasonable restraint of trade.

Nor does this court think this contract is an unreasonable restraint of trade. Rae can still make fractional horsepower motors to fit the same applications it is now selling, as long as the motor casing is not confusingly similar in appearance to Howard's.

■ Nor does this contract tend to establish a monopoly, for not only can Rae change the design of its shell and compete fairly, but further, the record discloses five other manufacturers of this type motor.

Plaintiff's counsel is directed to prepare and submit proposed findings of fact and conclusions of law in conformity herewith, submitting them to defendant's counsel for approval as to form only. These findings of fact and conclusions of law should include an order for the requested injunction.

Counsel for each party is directed to prepare, serve and submit, within twenty days, a proposed order of reference to a Special Master referring the matter of damages to such Special Master, leaving the name of the Special Master blank in the proposed order, it to be prepared in conformity with Rule 53(b) and (c) of Federal Rules of Civil Procedure, 28 U.S.C.A., and to give the Special Master proper directions as to the determination of damages, with citations of authority in support of any claim as to how the damages were determined and assessed.