**PIKLE–RITE COMPANY, Inc.,**
v.
**CHICAGO PICKLE CO., Inc.**
No. 57 C 863.

United States District Court
N. D. Illinois.
Jan. 13, 1959.

---

John F. Brezina, John Charles Brezina, Chicago, Ill., for plaintiff.

Samuel Z. Goldman, Chicago, Ill., for defendant.

JULIUS J. HOFFMAN, District Judge.

This is an action for trade-mark infringement and unfair competition in which the plaintiff seeks an injunction, an accounting and treble damages.

The plaintiff is an Illinois corporation having its principal office and place of business in Pulaski, Wisconsin. The defendant is an Illinois corporation having its principal office and place of business in Chicago. In 1932, plaintiff's predecessor, John A. Wood, established the business of preparing and selling bottled pickles and related products. In 1942, this business was taken over by Pikle-Rite Company, an unincorporated business entity which was incorporated in 1948. Since 1932, plaintiff and its predecessors have owned and used the trade-mark "Polka" to designate different varieties of pickles which are sold primarily in self-service grocery stores in Illinois, Wisconsin, Iowa, Michigan, Minnesota, Indiana and Ohio. Since 1934, the name "Polka" has been registered as a trade-mark under the laws of Illinois. On August 7, 1956, plaintiff was granted a federal trade-mark regis-

tration on the name "Polka." As registered, the name is preceded and followed by a pair of musical notes. The name "Polka," as applied to pickle products, is fanciful, arbitrary, non-descriptive and non-generic, and is a valid trademark.

Representative labels under which plaintiff markets some of its "Polka"-brand pickle products are as follows:

Although the plaintiff prepares and bottles other vegetables, its "Polka"-brand pickle products are its principal items of business. The plaintiff has advertised its "Polka"-brand products through the media of television, radio, newspapers, window posters, shelf posters and gifts such as pencils, lazy susans and plastic aprons. However, the evidence discloses no comprehensive advertising expenditures.

For the period January 1953 through June 1957, the total amount of sales of "Polka"-brand products was $311,184.11. The yearly amount of sales of these products was as follows:

| | |
|---|---|
| 1953 | $ 49,014.75 |
| 1954 | 45,230.58 |
| 1955 | 68,461.56 |
| 1956 | 100,037.32 |
| 1957 | 48,439.90 |
| (through June) | |

There is no evidence on the question whether the pickle business as a whole was substantially better in 1956 than it was in 1955. Nor is there any evidence on the question whether the plaintiff expanded its business or its advertising in 1956.

In December 1956, defendant began to distribute pickles in bottles which bore the brand-name "Pol-Pak." Defendant's label is as follows:

The defendant markets its products through self-service grocery stores. However, the evidence does not disclose whether the defendant utilizes this method exclusively or even primarily.

With reference to infringement, the basic issue in this case is whether the defendant's use of the name "Pol-Pak" on its products " * * * is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods." 15 U.S.C.A. § 1114(1) (a). For the reasons which follow, I am of the opinion that the defendant's brand-name "Pol-Pak" is confusingly similar to the plaintiff's trade-mark "Polka," and that the plaintiff is entitled to injunctive relief. However, I am also of the opinion that the plaintiff is not entitled to an accounting and damages.

There is no dispute between the parties as to the law which is applicable to the instant case. In Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir.,

1927, 18 F.2d 774, at page 775, the law of infringement was stated as follows:

"Whether there is an infringement of a trade-mark does not depend upon the use of identical words, nor on the question as to whether they are so similar that a person looking at one would be deceived into the belief that it was the other; but it is sufficient if one adopts a trade-name or a trade-mark so like another in form, spelling, or sound that one, *with a not very definite or clear recollection as to the real trade-mark, is likely to become confused or misled."* (Emphasis added.)

This rule has been applied in numerous other cases. Nu-Enamel Corp. v. Armstrong Paint & Varnish Works, 7 Cir., 1938, 95 F.2d 448, affirmed 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; California Fruit Growers Exchange v. Windsor Beverages, 7 Cir., 1941, 118 F.2d 149; Syncromatic Corp. v. Eureka Williams Corp., 7 Cir., 1949, 174 F.2d 649, certiorari denied 1949, 338 U.S. 829, 70 S.Ct. 79, 94 L.Ed. 504; Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 1950, 179 F.2d 265; Benrose Fabrics Corp. v. Rosenstein, 7 Cir., 1950, 183 F.2d 355; Independent Nail & Pack. Co. v. Stronghold Screw Prod., 7 Cir., 1953, 205 F.2d 921, certiorari denied 1953, 346 U.S. 886, 74 S.Ct. 138, 98 L.Ed. 391; Keller Products v. Rubber Linings Corp., 7 Cir., 1954, 213 F.2d 382, 47 A.L.R.2d 1108; Square D. Co. v. Sorenson, 7 Cir., 1955, 224 F.2d 61.

In determining whether the likelihood of confusion exists, it should be noted that:

"The ascertainment of probability of confusion because of similarity of trade names presents a problem not solvable by a precise rule or measure. Rather is it a matter of varying human reactions to situations incapable of exact appraisement. We are to determine, as was the District Judge, the purchasing public's

state of mind when confronted by somewhat similar trade names singly presented. Is the similarity of name or dress such as to delude the public or will the prospective buyer readily differentiate between the two names? We can only contemplate, speculate, and weigh the probabilities of deception arising from the similarities and conclude as our, and the District Judge's, reactions persuade us." Colburn v. Puritan Mills, 7 Cir., 1939, 108 F.2d 377, at page 378.

Although the question presented by the instant case cannot be solved by precise rule or measure, certain factors are relevant. Whether infringement exists is not to be determined solely by a side-by-side comparison of the names in question. Square D. Co. v. Sorenson, 7 Cir., 1955, 224 F.2d 61; Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 1950, 179 F.2d 265. Although it is proper to consider the names as a whole, the names should not be examined with a microscope to detect minute differences. Syncromatic Corp. v. Eureka Williams Corp., 7 Cir., 1949, 174 F.2d 649, certiorari denied 1949, 338 U.S. 829, 70 S.Ct. 79, 94 L.Ed. 504. To constitute infringement, it is not necessary that the defendant appropriate the whole of plaintiff's mark, and the imitation need only be slight if it attaches to the salient feature of plaintiff's mark. Independent Nail & Pack. Co. v. Stronghold Screw Prod., 7 Cir., 1953, 205 F.2d 921. The court should also consider the form, spelling and sound of the marks in question, Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 1927, 18 F.2d 774; whether the products involved are the same or similar, Benrose Fabrics Corp. v. Rosenstein, 7 Cir., 1950, 183 F.2d 355; whether the products are sold to the same prospective customers, Independent Nail & Pack. Co. v. Stronghold Screw Prod., supra, and whether the conditions under which the products are purchased are the same or similar, Albert Dickinson Co. v. Mellos Peanut Co., supra.

■ In the instant case, there is no evidence that any purchaser was, in fact, confused or misled by the defendant's use of the name "Pol-Pak." However, it was not necessary for the plaintiff to prove actual confusion. The statutory test is likelihood of confusion. 15 U.S.C. A. § 1114(1)(a); Keller Products v. Rubber Linings Corp., 7 Cir., 1954, 213 F.2d 382, 47 A.L.R.2d 1108; Independent Nail & Pack. Co. v. Stronghold Screw Prod., supra.

■ I am of the opinion that the defendant's use of the name "Pol-Pak" gives rise to the likelihood of confusing similarity. The salient part of defendant's brand-name, i.e., "Pol," constitutes three-fifths of plaintiff's trade-mark. Common experience teaches that an individual will more readily remember the first part of a name than some other part. Further, to the extent that the defendant's pickles are sold in self-service grocery stores, the parties utilize the same or similar commercial channels, the prospective purchaser is the same, and the conditions under which the products are purchased are the same or similar. The names "Polka" and "Pol-Pak" are not more dissimilar than the names "Cutex" and "Cuticlean" which were held to be confusingly similar in Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 1927, 18 F.2d 774. The Northam case also refutes defendant's contention that the name "Pol" is but an abbreviation for the descriptive word "Polish," and is, therefore, not infringing. In the Northam case, the designation "Cuti" was an abbreviation for the descriptive or generic word "cuticle," but the court held that "Cuticlean" infringed "Cutex."

■ The defendant contends that a side-by-side comparison of the *labels* in question discloses no confusing similarity. However, as noted above, infringement is not to be determined solely by such comparison. The reason for this rule is that the ultimate purchaser is seldom presented with the opportunity of making such comparison. Further,

it is to be doubted that the labels, apart from the marks in question, should be considered. It has been asserted as a general rule that differences in labels should not be considered in determining whether defendant's brand-name infringes plaintiff's trade-mark. 1 Nims, Unfair Competition and Trade Marks, § 221k, p. 716 et seq. However, Nims cites, as a case contrary to the general rule, John Morrell & Co. v. Doyle, 7 Cir., 1938, 97 F.2d 232, certiorari denied 1938, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 415. In the Morrell case, the plaintiff sold dog food under the trade-mark "Red Heart" which comprised those words superimposed upon a red heart. The defendant sold dog and cat food under the brand-name "Strong Heart" which name was accompanied by the picture of a famous dog, Strongheart. In holding that the plaintiff's trade-mark was not infringed, the court considered and emphasized the picture of the dog, and the court expressly declined to consider the name "Strong Heart" in vacuo. In spite of this fact, I am of the opinion that the Morrell case does not derogate from the general rule. The rationale of that decision is that, with regard to the defendant's label,

> " * * * the characteristic feature, the thing which appeals to the eye and which, no doubt, makes the lasting impression upon a person's memory, is not Strongheart or Heart, but the picture of a dog. Assuming that persons who are interested in dog foods are dog fanciers, what could make such an appeal or create such a lasting impression as an imposing picture of a dog and especially if it be the picture of a dog of fame such as the record here indicates to be the case?" 97 F.2d at page 237.

Thus, the court merely held that the essence of defendant's brand-name was a picture and not a name. In the instant case, the salient part of defendant's label is the brand-name "Pol-Pak"; the picture of a pickle is without significance. Further, to the extent that the representation of Polish dancers is a salient part of plaintiff's label, the representation reinforces the trade-mark "Polka." It does not derogate from the mark as the picture of the dog derogated from the brand-name "Strong Heart." In addition, it should be noted that the plaintiff has advertised the name "Polka" apart from the representation of Polish dancers.

Even in an economy in which diverse methods of advertising are employed, the spoken word is of great importance. A prospective purchaser may learn of plaintiff's "Polka"-brand products from her neighbor; she may hear radio advertisements; she may hear and see television advertisements and the memory of the spoken word may exist long after the memory of the image has faded. Further, the law does not presume that the prospective purchaser will have the opportunity to make a side-by-side comparison of different products and brand-names. As stated in Colburn v. Puritan Mills, 7 Cir., 1939, 108 F.2d 377, at page 378:

> "We are to determine, as was the District Judge, the purchasing public's state of mind when confronted by somewhat similar trade names *singly presented.*" (Emphasis added.)

Also, it must be borne in mind that we are dealing neither with an unusual product which requires discriminating purchase nor with a purchasing public which is discriminating. To the contrary, it has been asserted that the average purchaser undergoes, while in a supermarket, an experience not unlike that of hypnosis. Packard, The Hidden Persuaders, pp. 91–2 (Cardinal Edition, 1958). Under such circumstances, it is not unduly harsh to restrain the defendant's use of the name "Pol-Pak." The defendant, in selecting a name for its product, could have drawn upon the entire range of its imagination. It chose not to do so and, instead, selected a name which is likely to confuse prospective purchasers of plaintiff's products. I con-

clude that the defendant's use of the name "Pol-Pak" should be enjoined.

■ Consideration will next be given to the territorial scope of the injunction. On this issue, a division of authority exists. In 87 C.J.S. Trade-Marks, etc. § 211d, p. 597, it is stated:

"The wrongful appropriation of plaintiff's trade-mark will be enjoined wherever it is used by him, including those places where he might do so in the course of normal business expansion. On the other hand, it has been held that injunctive relief should be limited to states in which plaintiff has established a market for the articles bearing his trade-mark * * *."

On the facts of the instant case, it is impossible to determine whether it may reasonably be anticipated that the plaintiff will expand its business. Accordingly, I am of the opinion that the injunction should be limited to those states in which plaintiff has established a market for its "Polka"-brand products.

■ The above discussion, although limited to the claim of trade-mark infringement, applies with equal vigor to plaintiff's claim of unfair competition, and as to both of these claims, I am of the opinion that plaintiff is entitled to no relief other than an injunction. In Square D. Co. v. Sorenson, 7 Cir., 1955, 224 F.2d 61, at pages 65–66, it was stated:

"Plaintiffs failed to prove fraud or a palming off by defendants of any article to persons who believed they were buying plaintiff's product. While the absence of fraud or palming off does not undermine a finding of unfair competition (citing cases), the character of the conduct giving rise to the unfair competition is relevant to the remedy which should be afforded. An accounting will not be ordered merely because there has been an infringement (citing case). As under the trade mark act of 1905, under the present act an accounting has been denied where an injunction will satisfy the equities of the case."

In the instant case, the evidence is insufficient to warrant the conclusion that the defendant was guilty of fraud, palming off or intentional infringement, and I conclude that an injunction will satisfy the equities of the case. The defendant will bear the costs of this action. The plaintiff is directed to submit a judgment order in conformity with the views herein expressed on or before January 21, 1959.

This memorandum of decision contains the findings of fact and conclusions of law required under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.