**HOWARD INDUSTRIES, INC., a Corporation, Plaintiff-Appellee,**

v.

**RAE MOTOR CORPORATION, a Corporation, Defendant-Appellant.**

No. 13216.

United States Court of Appeals
Seventh Circuit.

June 27, 1961.

Rehearing Denied Sept. 8, 1961.

Rex Capwell, Richard F. Foltz, Racine, Wis., for defendant-appellant.

Carroll R. Heft, Glenn R. Coates, Racine, Wis., for appellee.

Before DUFFY, SCHNACKENBERG and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment entered August 26, 1960, in favor of Howard Industries, Inc. (Howard) against Rae Motor Corporation (Rae), for damages in the sum of $99,466.84, together with costs and disbursements in the sum of $1,853.65, or a total of $101,320.49. The Court in its judgment approved the findings and report of a Special Master to whom the matter had been referred for the purpose of ascertaining and determining damages sustained by Howard as the result of a breach of contract by Rae.

As subsequently shown, Rae's liability had been previously determined, and in the instant proceeding the sole issue is whether the approval by the District Court of the Master's findings and report as to the amount of damages is clearly erroneous.

Some statement of facts appears to be in order relative to the relation of the parties, the nature of the case and previous court proceedings culminating in a settlement contract which forms the basis for the instant action. In August 1945, Howard purchased the assets of Electric Motor Corporation (EMC), including a Model 11-A casing, and continued such business. The personnel of EMC continued in the employ of Howard for a few months, then organized Rae and commenced the manufacture and sale of fractional horsepower motors. During the period material to the present case, both Howard and Rae were engaged in the manufacture and sale of fractional horsepower motors which were housed in a casing or shell.

Howard in its purchase from EMC acquired a patent upon its motor. In 1948, Howard commenced an action against Rae for infringement of such patent. The claims did not read on the shell or casing but upon parts of the motor contained therein. Howard in the same action complained that Rae was housing its motors in a shell or casing confusingly similar to that used by Howard and previously by EMC.

On August 15, 1949, Howard and Rae entered into an agreement in which Rae conceded the infringement alleged, and that phase of the litigation was settled and terminated. The agreement also contained a provision by which Rae agreed to refrain from the further use of a casing design confusingly similar in appearance to that employed by Howard.

On August 25, 1954, Howard commenced the instant action against Rae for damages and other relief resulting from the latter's alleged breach of the settlement agreement by the manufacture and sale of its motors in casings confusingly similar in appearance to those manufactured by Howard. By pretrial order the Court directed that the issue of liability be severed and tried first. On this issue only the case was tried and a judgment entered in favor of Howard and against Rae. Howard Industries, Inc. v. Rae Motor Corp., D. C., 165 F.Supp. 646. This Court upon appeal by Rae affirmed, 267 F.2d 430.[1]

Following the adjudication of Rae's liability, a Special Master was appointed to ascertain damages sustained by Howard. The Master's ascertainment, together with his findings and conclusions, were included in his report to the Court. Such report, over Rae's objections, was approved by the Court and judgment entered from which this appeal comes.

■■ Approaching the issue for decision, we must keep in mind Rules 52(a) and 53(e) (II) of the Federal Rules of Civil Procedure, 28 U.S.C.A., that the findings of a Master must be sustained by the trial court unless clearly erroneous and, when so sustained, as they have been in the instant case, must be accepted by this Court unless we can say that they are clearly erroneous. It also must be kept in mind, as already noted, that Rae's liability, or the fact of damage, has been determined. Moreover, Rae from the time of its organization

---

**I.** The settlement agreement is set forth in the opinion of the District Court as well as in that of this Court, which obviates the necessity of repeating it here.

has been in continuous violation of Howard's rights. Prior to the execution of the settlement agreement, Rae infringed Howard's patent upon its fractional horsepower motor and so admitted in the settlement agreement. For the ten-year period subsequent to the execution of the settlement agreement, Rae in violation of its agreement manufactured and sold its motor in a casing confusingly similar in appearance to that employed by Howard. More specifically, Rae has been adjudicated a wrongdoer and admittedly is liable to Howard in damages. In this connection we think the Master was justified in finding, "On all of the evidence, defendant's breach of the August 15, 1949 contract was neither unconscious nor inadvertent."

Rae's principal argument is that the Master utilized an improper formula in his ascertainment of damages, which resulted in an award based upon guess, uncertainty and speculation. A similar contention has been advanced in many cases and usually rejected where the fact of damage has been firmly established. In such cases a liberal rule has been evolved relative to the ascertainment of damages, a rule designed to protect the victim and prevent a wrongdoer from escaping the consequences of his own conduct.

In Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264, 66 S.Ct. 574, 580, 90 L.Ed. 652, the Court, after recognizing that an award of damages could not be based on speculation or guesswork, stated:

> "But the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances 'juries are allowed to act on probable and inferential as well as direct and positive proof.' [Citing cases.] Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim."

In Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544, the Court, in discussing the difficulty in making proof of the amount of damages, stated:

> " * * * it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise."

We think the reasoning of the Court in these two cases is pertinent even though they involved actions for violation of the Antitrust Act. In fact, the Court in Bigelow pointed out (327 U.S. at page 265, 66 S.Ct. at page 580) that the principle is an ancient one and "is not restricted to proof of damage in antitrust suits."

In Lawlor v. National Screen Service Corp., 3 Cir., 270 F.2d 146, 153, the Court, in commenting upon Bigelow, Story Parchment and other cases, stated:

> "These cases, however, merely stand for the proposition that having established the fact of damage or legal injury, the difficulty of determining the amount of damage will not preclude a recovery."

In De Long Corp. v. Lucas, D.C., 176 F.Supp. 104, in an action for damages for breach of contract, it was contended that damages were too speculative and uncertain to justify an award. The Court (at page 125) cites cases in support of the rule which proscribes the recovery of uncertain and speculative damages where the fact of damages is uncertain. On the other hand, the Court cites many cases (same page) for the proposition that where the fact of damages is certain, the uncertainty of the amount will not prevent their being assessed.

In Hedrick v. Perry, 10 Cir., 102 F.2d 802, 807, the Court, in an action for breach of contract, stated:

> "Recovery cannot be had where there is uncertainty whether a con-

tract has been breached or a tort committed, but damages may be awarded where there is no uncertainty as to whether the rights of plaintiff have been invaded even though there may be some uncertainty in respect to the amount of the damages sustained. The amount need not be proved with absolute certainty. It is enough if the evidence adduced is sufficient to enable the court or jury to make a fair and reasonable approximation."

Many cases are cited in support of this statement, including Excelsior Motor Mfg. & Supply Co. v. Sound Equipment, Inc., 7 Cir., 73 F.2d 725, a decision of this Court. This also was an action for damages based on breach of contract. The Court stated (at page 729):

"The breach of the contract having prevented such profits from being made, conclusive proof is impossible. The injured party is permitted to introduce evidence tending to establish the damage and no greater degree of certainty of proof is required than for any other fact essential to be established in a civil action."

In A. C. Becken Co. v. Gemex Corp., 272 F.2d 1, 5, a more recent decision of this Court, the principle under discussion is stated and applied.

Rae's heavy reliance upon Wawak & Co., Inc. v. Kaiser et al., 129 F.2d 66, a decision of this Court, is misplaced. That was an action for unfair competition and it was contended that the proof did not support the award of damages. The Court (at page 69) stated:

"Once evidence of damage has been established, plaintiff may recover even though the amount is not capable of definite mathematical ascertainment. In such cases the triers of the facts must fix the damages by reasonable estimate and approximation." (Citing cases.)

Applying the principles enunciated by the cited cases, we conclude that the findings of the Master must be accepted. Certainly we cannot hold that they are clearly erroneous. No good purpose could be served in a detailed statement or analysis of the large amount of statistical information and other factors which the Master took into consideration. Howard (including its predecessor) had long been engaged in the manufacture and sale of a motor enclosed in a casing which because of its design had received wide public acclaim. On the other hand, Rae was a newcomer in the field and must have regarded as important in the trade the casing design employed by Howard. In any event, it agreed to refrain from the use of any design confusingly similar to that utilized by Howard.

From the statistical information, a few figures may be noted. During the three-year period prior to the settlement agreement, the total sales made by Howard amounted to $1,025,052, or average annual sales of $341,684. During the five-year period following the settlement agreement, Howard's total sales dropped to $569,931.64, or average annual sales of $113,986.33. In contrast, Rae's sales for the three years preceding the agreement totaled $477,961, or an annual average of $159,320. During the five-year period following the agreement, its sales rose to a total of $1,597,142.38, or an annual average of $319,428.47. Thus, Howard's annual sales after the settlement agreement decreased to about one-third of what they had previously been. During the same period, Rae's annual sales were almost double what they had previously been.

■ The Master calculated damages sustained by Howard on the basis of sales made by Rae to common customers, that is, those which purchased motors from both parties. Limiting the sales made by the parties to such customers, Howard's annual sales prior to the settlement agreement were $131,160.80, while Rae's amounted to $79,207. During the five-year period following the agreement, Howard's annual sales to common customers dropped to $36,197.18, while Rae's sales to such customers increased to $238,687.90. Thus, while

Howard's sales to common customers showed a marked decrease after the agreement, sales made by Rae increased threefold. These calculations alone furnished a reasonable basis for the Master's inference that Howard sustained substantial damages.

■ Rae admits, as it must in view of the previous litigation to which we have referred, that it is liable in damages; in fact, before the Master it advanced a theory which would justify an award of $6,000, and argues that no greater damages were shown to a certainty. Yet the record discloses that its net profit from the sale of motors enclosed in the casing in question amounted to $146,355.28. However, as we have shown, Howard was not required to prove damages to a certainty. Under the cases previously cited, it was within the province of the Master to make a "reasonable estimate and approximation" of the damages sustained.

We have considered but find unnecessary to discuss all the criticism which Rae directs at the Master's findings and conclusions. Perhaps the most argued point is that the Master erred in the class of customers taken into consideration in fixing damages. As already noted, the Master allowed as damages profits on sales made by Rae to common customers, regardless of when they became customers of Howard, that is, prior or subsequent to the execution of the settlement agreement. Rae contends that it was error for the Master to include customers acquired by Howard subsequent to the execution of the settlement agreement, in other words, to include customers first obtained by Rae. No case is cited in support of this contention and we think it is not sound. Rae was obligated by agreement to refrain from selling motors in casings confusingly similar to those of Howard, and it is our view that Rae was liable in damages for use of the inhibited casing irrespective of which of the parties made the first sale. In fact, we think Rae fared well in the Master's limitation of sales to common customers. The provision in the settlement agreement was absolute, and Rae was prohibited from selling motors contained in the casing design in question, irrespective of whether customers for such were in existence or merely potential, and irrespective of whether they were common customers or otherwise.

Rae particularly emphasizes what is referred to as the Niagara Therapy account, where sales were made by Rae prior to those by Howard. It is argued that such sales were made as a result of an improved motor required by Niagara and that the casing was not significant. Any merit in this contention is largely dissipated by the previous proceeding on the issue of liability. It is now too late to argue that Rae is not liable for sales of motors enclosed in the proscribed casing, irrespective of the motor contained therein, whether it be an improvement or otherwise. As the Master pointed out, Rae must have considered the casing design of its motor to be extremely important in its sales efforts, and obviously Howard thought likewise because Rae's agreement to refrain from its use was a material part of the consideration which caused Howard to abandon its patent infringement action.

Furthermore, we are of the view that Rae cannot escape responsibility for sales made in violation of its settlement agreement even though other factors such as an improved motor might have contributed thereto. In Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, at page 265, 66 S.Ct. 574, at page 580, the Court, in what we think is an analogous situation, stated:

"And in cases where a wrongdoer has incorporated the subject of a plaintiff's patent or trade-mark in a single product to which the defendant has contributed other elements of value or utility, and has derived profits from the sale of the product, this Court has sustained recovery of the full amount of defendant's profits where his own wrongful action has made it impossible for the plain-

tiff to show in what proportions he and the defendant have contributed to the profits. [Citing cases.]"

While the case is not free from all doubt, we conclude that the judgment must be affirmed. Such result is dictated by reason and logic and we think supported by the case law.

The judgment is

Affirmed.