**UNITED STATES of America, f/u/b/o Henry J. Larkin, d/b/a Larkin Company, Plaintiff, Appellant,**

v.

**S. VOLPE & CO. Inc., et al., Defendants, Appellees.**

**No. 6620.**

United States Court of Appeals First Circuit.

Submitted March 8, 1966.
Decided April 15, 1966.

Henry J. Larkin, on brief, pro se.

Herman Snyder, Philip Markell and Snyder, Tepper, Berlin & Katz, Boston, Mass., on brief for appellees.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from a judgment dismissing the complaint of Henry J. Larkin, d/b/a Larkin Co., against S. Volpe Co., Inc., and its surety, The Travelers Indemnity Company, brought under the Miller Act[1] to recover the value of labor and materials furnished by plaintiff to defendant.[2]

The dispute arose out of three contracts under which plaintiff agreed to do certain heating, plumbing and other work at Otis Air Force Base in Falmouth, Massachusetts, as a subcontractor for the defendant who was engaged in the construction of certain facilities there for the United States Government. Plaintiff alleges that in addition to the labor and materials furnished in connection with his subcontracts, he was required to do substantial amounts of other work for which he is entitled to be paid. Plaintiff further alleges that the defendant breached said subcontracts and by reason thereof he is entitled to disregard the contracts and recover against the defendants in quantum meruit for the fair value of *all* the labor and materials furnished in connection with this job. This he seeks to do in this action.

The district court referred the case to a master who, after hearing the evidence, submitted his report finding that the plaintiff had been paid all amounts due him and the defendants owe him nothing. The district court, after hearing, confirmed the master's report and dismissed the complaint. Plaintiff's appeal raises only one basic question—whether the findings of the master were clearly er-

roneous and we shall review the evidence and the findings briefly with that in mind.

The additional labor and materials for which plaintiff seeks to recover are as follows: (a) further excavation and backfilling of trenches; (b) work done on secondary electrical circuits; (c) furnishing and installing certain food service equipment; (d) furnishing and installation of duct insulation and (e) payments claimed for settling a strike.

We think there is ample evidence to support the master's findings. The findings with respect to the excavation (a) supra, are based on the testimony of defendant's superintendent that the trenches were left open too long; that the soil was sandy and had a tendency to cave in; that plaintiff was warned almost daily that he should follow along with his pipe; that plaintiff rolled pipes down the sides and into the trenches instead of using a crane which was the accepted method of laying the pipe in these circumstances. This testimony was uncontradicted and on the basis of it we cannot say the master was clearly erroneous in finding that the further excavation was due to the plaintiff's own fault.

The master's findings with respect to the secondary electrical circuit work (b) supra, resulted from the resolution of conflicting testimony as to just what secondary electrical circuit work really includes. The master found that according to the custom and usage of the trade, secondary circuit work is done by the electrical contractor. This work was done here by an electrical subcontractor of the defendant and not by the plaintiff. Consequently plaintiff was not entitled to be paid anything for this work.

With respect to the food service appurtenances and installation claims (c) supra, the claim for refrigeration equipment was found to be included in one of plaintiff's subcontracts and the evidence

---

1. 40 U.S.C. § 270b.

2. The principal defendant is S. Volpe & Co., Inc., and the term 'defendant' as used herein applies only to S. Volpe & Co., Inc.

**134**

indicates that the other two claims had merit but were excessive. These claims were reduced at a meeting of the plaintiff, defendant and the government held on March 16, 1960, and plaintiff was paid on the basis of the reduced amount. The master found on evidence brought out at this meeting that the claims were adjusted equitably in the presence of the parties and that any claim over and above the adjusted amount was without foundation.

The evidence with reference to the claim for duct insulation (d) supra, indicates that this claim also had merit but was excessive and was reduced by the corps of engineers; that plaintiff's ten percent mark-up was added to the reduced figure and he received the money due him. On these facts the master found that the claim for any excess was without foundation.

Plaintiff's so-called strike settlement claim (e) supra, is based on alleged extra labor costs suffered by the plaintiff by reason of his compliance with a request of the defendant to settle his disputes with a labor union. The evidence amply supports the master's finding that plaintiff's labor troubles were of his own making. Nowhere in the record do we find evidence of a promise by the defendant to pay the plaintiff for the settling of such disputes.

We come now to plaintiff's claim that the defendant breached the subcontracts and, therefore, that he is entitled to recover in quantum meruit. The total contract price was $515,000. The amount plaintiff seeks to recover in quantum meruit is $672,209.76. The record shows he has already been paid $532,609.06 to which must be added the sum of $12,000 held pending disposition of a lien claim of approximately that amount; making total payments of $544,609.06.

The breaches alleged are that defendant refused to do work excluded by the subcontracts and plaintiff was obliged to do additional work in order to complete his own contracts; also that defendant did not make monthly payments to him as required under the prime contract between the defendant and the government. The first claim of breach has already been disposed of by the master's findings with reference to the claims for additional work above mentioned. As to the second, the master found that the payments clause in the prime contract was not incorporated by reference into the subcontracts. We agree with this finding. Guerini Stone Co. v. P. J. Carlin Const. Co., 240 U.S. 264, 277, 36 S.Ct. 300, 60 L.Ed. 636 (1916). The master also found there were no breaches of the subcontracts by the defendant with reference to payments to the plaintiff. In our opinion this finding was also correct.

 This court has held that the findings of a master are entitled to great weight and should not be disregarded unless clearly wrong. Baker v. Simmons Company, 325 F.2d 580, 582 (1st Cir. 1963). The rationale of this rule is that the master enjoyed the advantage of seeing and hearing the witnesses and was enabled thereby to judge their veracity and credibility and the trial court must respect this advantage. Ferroline Corp. v. General Aniline & Film Corp., 207 F.2d 912, 920 (7th Cir. 1953); O'Hara v. Murphy, 137 F.2d 154, 155 (1st Cir. 1943).

██ Under Rules 52(a) and 53(e) (II) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the findings of a master must be sustained by the trial court unless clearly erroneous and when so sustained, as they have been in the instant case, must be accepted by this court unless we can say that they are clearly erroneous. Howard Industries, Inc. v. Rae Motor Corporation, 293 F.2d 116, 117 (7th Cir. 1961).

We have carefully examined the record and cannot say that the master's findings or the action of the trial court adopting them and dismissing the suit was clearly erroneous.

Affirmed.