William McINTOSH et al., etc., Claimants,
Appellants,

v.

James W. NOONAN, Trustee, Appellee.

No. 7122.

United States Court of Appeals
First Circuit.

Nov. 1, 1968.

Morris Michelson, Boston, Mass., for appellants.

Harold Lavien, Boston, Mass., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from an order of the district court confirming a master's report disallowing appellants' claim in a bankruptcy proceeding. The claim is for unpaid commissions earned by appellants under a written agreement with the debtor, Newal, Inc. The master made the following pertinent findings of fact. Claimants, the brothers William and Ralph McIntosh, went to work for the debtor in 1957, one in the production department, the other in engineering. On or about January 1, 1962, they entered into an oral agreement with the debtor to act as its sales representative in the sale of various products. The brothers, doing business as McIntosh Associates, worked under the oral agreement until September 30, 1963, and during this period were paid a weekly draw of salary and expenses against commissions. By September 30, 1963, they had drawn $34,444.49 in excess of commissions earned. On or about that date the parties entered into a written agreement, the effect of which was to enlarge the brothers' sales territory and expand their product line. Although the written agreement specified that their compensation was to be commissions only, they continued to be paid a weekly draw of salary and expenses against commissions. This agreement was terminated on March 1, 1965, by mutual consent. As of that date the brothers had overdrawn their commissions by an additional $43,382.50, making a total overdraw of $77,826.99. As part of the termina-

tion it was agreed that the McIntoshes should be credited with certain orders already procured but not yet accepted by the debtor and the master found that for the period from March 1, 1965, to the date of their claim they were entitled to commissions of $67,085.84 on which no payments were received. On March 8, 1965, the debtor filed its voluntary petition under Chapter X of the Bankruptcy Act and in due course the defendant trustee was appointed.

The master also found that the September 30 written agreement formalized the parties' previous oral agreement made in January 1962 "upon the understanding that a written agreement would be prepared at a later date." He further found that during the entire period in which the McIntoshes acted as sales representative for the debtor they were overpaid by the sum of $10,741.25 (sic).[1] The master arrived at this figure by deducting the total amount of commissions earned from the total of the overdraws during said period. In short, he set off the $34,000 advance made during the period of the oral agreement against the claim under the written agreement. Claimants contend that there was no agreement by which the McIntoshes obligated themselves to repay any excess of advances made over commissions earned prior to September 30, 1963, that the oral agreement was separate and distinct from the written one, and that

there was no money due when the oral agreement ended. Subtracting only the amount received after entering into a written contract from the amount of commissions claimants aver that they are entitled to $23,703.34.

The district court sustained the master's finding that the written agreement was the formalization of the prior oral agreement and that all sums involved during the entire period of the sales representation should be considered in the computation. Also, the court rejected claimants' contention that under the parol evidence rule the advances made under the oral agreement were improperly considered by the master.

█ As we have recently held in United States v. S. Volpe & Co., 359 F.2d 132, 134 (1st Cir. 1966) "[T]he findings of a master must be sustained by the trial court unless clearly erroneous and when so sustained, * * * must be accepted by this court unless we can say that they are clearly erroneous (citation)."

It is clear from William McIntosh's testimony that the brothers were to start work immediately in January 1962 "upon the understanding that a written agreement would be prepared at a later date," and that the terms of the oral agreement were tenuous indeed.[2] His further testimony indicates that this uncertainty continued at least until the written agreement was executed.[3]

1. The master found "with respect to the trustee's petition (for affirmative relief) that there was no agreement between the parties, either expressed or implied, wherein the McIntoshes were to repay to the debtor any excess in the advance draw paid to them over the actual commissions earned, and that in the absence of any such agreement * * * the trustee may not recover the amount of such excess from the McIntoshes." The trustee did not appeal from this finding.

2. "Inasmuch as there was no representation at the time [Jan. 1, 1962] because the previous representative had resigned, the orginal agreement was that we would start immediately, and a proposal would be written up. We went to work immediately without agreeing exactly on

what product line we would cover. The percentage rates of commission and so on, they wanted immediate coverage. The other representative had left. In the meantime Mr. Nohe [the executive vice president and treasurer of the debtor] was to make a proposal, we were to agree on his proposal and I think the commission rates, the areas we were to cover and so on."

3. Q. "At sometime or other did you agree upon what the percentages were going to be for commissions?"
A. "No. We had discussed, after our first year of operation, it was found it would be impossible, with these product lines, to make ourselves self-sufficient. We had various meetings. It was finally agreed on with the

One Burman [sales manager for the debtor] who entered into the written agreement with the McIntoshes on behalf of the company, testified that this contract "in effect formalized the agreement that was reached verbally prior to that."

Further evidence of the continuity of the same contractual relationship was contained in the testimony of an accountant that the company books reflected no difference in accounting procedure with regard to the McIntoshes before or after the September 30 agreement.[4]

■ On the basis of the above testimony we cannot say that the master's finding that the written agreement of September 30, 1963, formalized the parties' previous oral agreement was clearly wrong. See Anagnosti v. Almy, 252 Mass. 492, 147 N.E. 854 (1925).

In challenging the master's report on the basis of the parol evidence rule claimants argue that to read a provision into the written contract that it took effect as of January 1, 1962, is to vary its express terms. Nowhere in his report did the master so interpret the written contract. In Anagnosti v. Almy, supra, the facts of which bear a strong resemblance to those in the instant case, the Supreme Judicial Court rejected the master's finding that "the parties desired and intended to have their contract date back to the beginnings of their relation" and held

"[I]t is manifest that upon the reported facts the decision of the trial judge was correct in stating that

'The writing * * * did not operate to terminate * * * the oral contract, but served rather as a convenient memorial or record of it, embodying the entire agreement of the parties, to be construed and interpreted, however, in the light of all the circumstances including the terms of the original oral agreement.' * * * The effect of putting the contract in writing was merely to continue in force upon the same terms the previous oral agreement."

We think this interpretation is equally valid as applied to the facts before us.

Nor are we persuaded by claimants' contention that even if the contract is so interpreted, the advances under the oral agreement should not be charged against them. The only statement in the written contract with reference to compensation is that the brothers would be paid commissions. It makes no provision for advances against commissions or for repayment of overdraws. Yet in computing their claim for commissions due under the written contract the McIntoshes, of their own volition, offset the $43,382.50 already paid to them from the $67,085.84 in commissions due. As the district court points out, in taking a position inconsistent with the contract, the McIntoshes in effect concede that the actual method of compensation was a draw intended to be offset against commissions.

■ The claimants' concession, coupled with the master's finding that the written contract formalized the oral agreement leads to the conclusion that

contract that existed in Sepember, September 3, (sic) 1963. * * *"
*       *       *       *       *
Master: "Was there an agreement at that time about commissions?"
The Witness: "No sir. We were still haggling at that particular time."
The Master: "September 30, 1963?"
The Witness: "Right."

4. Throughout the period of their employployment at Newal all financial matters which concerned the McIntoshes were recorded in a separate ledger called the Special Sales Representative Expenses

Account. The claimants argued that since the payments made from the account were written off as a business expense at the end of the year, that was evidence that all the advances were intended by the parties to be written off. At the time claimants brought their Proof of Claim pursuant to the written contract and offset the advances made to them under it, no change in accounting procedure had ever been made regarding this account. Therefore, the payments made under it were still being written off as they had been during the oral agreement.

there is no legal basis for treating the advances under the oral agreement differently from those made under the written contract.

They further argue that even if the trustee were to prevail on the parol evidence question, under Massachusetts law they are not liable to repay the $34,444.-49 advance in the absence of an express or implied agreement to the contrary. Perma-Home Corp. v. Nigro, 346 Mass. 349, 191 N.E.2d 745 (1963). Claimants point out that the September 1963 writing, which states that it contains the entire understanding of the parties, has no provision for repayment of advances. They do not, however, address themselves to the district court's findings that they conceded it was proper to offset their draws against their earnings under the written contract and that this contract formalized the prior oral agreement.

In view of our decision it is unnecessary to consider the other questions raised by the appeal.

Affirmed.